**BILLY J. WILLIAMS, OSB # 901366**
Acting United States Attorney
**STEPHEN J. ODELL, OSB # 903530**
Assistant United States Attorney
steve.odell@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204
Telephone:  (503) 727-1024
Telefax:  (503) 727-1117
 *Of Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| HOOD RIVER VALLEY RESIDENTS COMMITTEE, an Oregon non-profit corporation; MIKE MCCARTHY, individually; HOOD RIVER COUNTY by and through the BOARD OF COUNTY COMMISSIONERS OF HOOD RIVER COUNTY, an Oregon municipal corporation; & MT. HOOD MEADOWS OREGON, LLC, an Oregon LLC; CLACKAMAS COUNTY, by and through the BOARD OF COUNTY COMMISSIONERS OF CLACKAMAS COUNTY, a political subdivision of the State of Oregon,<br><br>*Plaintiffs,*<br><br>v.<br><br>JIM PEÑA, Regional Director of Region 6 of the United States Forest Service; LISA NORTHROP, Supervisor, Mt. Hood National Forest of the United States Forest Service; THOMAS L. TIDWELL, Chief of the United States Forest Service; and the UNITED STATES FOREST SERVICE, an Administrative Agency of the United States Department of Agriculture,<br><br>*Defendants.* | Case No.: 3:15-cv-01397-BR<br><br>**DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION**<br><br>**Oral Argument Respectfully Requested** |

**MOTION TO DISMISS**

Pursuant to Fed. R. Civ. P. 12(b)(1), Defendants hereby respectfully move to dismiss the Complaint (Dkt. #1) with prejudice in the above-captioned action. In accordance with LR 7-1(a), undersigned counsel for Defendant represents that he conferred with counsel for Plaintiffs on the relief sought by this motion and learned as a result that the originally named plaintiffs oppose this motion, while counsel for the later-added plaintiffs have not provided their positions yet in response to his attempts to confer on this motion; although original Plaintiffs' opposition of itself necessitates the filing of this motion, undersigned counsel for Defendants nevertheless will follow up and provide the respective positions of the other plaintiffs when they are supplied. For the reasons supplied in the memorandum in support of the motion that is incorporated into the motion and set forth below, Defendants respectfully submit that the Court should grant the motion and dismiss this action with prejudice.

**MEMDORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to present a defense to a claim grounded on the court's "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). In reviewing such a motion, the court presumes lack of subject- matter jurisdiction until the plaintiff proves otherwise in response to the motion. <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375, 377, (1994); <u>La Reunion Francaise SA v. Barnes</u>, 247 F.3d 1022, 1026 (9th Cir.2001). A Rule 12(b)(1) motion may be brought as a facial or factual attack on the asserted basis of the Court's subject-matter jurisdiction. <u>Gould Electronics, Inc. v. United States</u>, 220 F.3d 169, 176 (3rd Cir.2000). In reviewing a factual attack, the court may consider matters outside the pleadings and examine other documents without converting the motion into one for

Page 1 – DEFENDANTS' MOTION TO DISMISS
　　　*Hood River Valley Residents Comm. v. Forest Serv.,* Case No. 15-cv-1397-BR

summary judgment.  Berardinelli v. Castle & Cooke, Inc., 587 F.2d 37 (9th Cir.1978).  The court may weigh disputed evidence and determine the facts to evaluate whether jurisdiction exists.  Valdez v. United States, 837 F. Supp. 1065, 1067 (E.D. Cal.1993).  The presumption of truthfulness does not attach to the allegations of plaintiff's complaint or any inferences drawn therefrom.  Id.  Plaintiff has the burden to establish that the court has subject-matter jurisdiction.  Ass'n of Am. Med. Coll. v. United States, 217 F.3d 770 (9th Cir.2000).

The subject-matter jurisdiction of this Court over an action brought against the United States or one of its agencies or instrumentalities, as is the one *sub judice*, is limited to the terms of consent by the United States.  United States v. Dalm, 494 U.S. 596, 608 (1990)(citing United States v. Mottaz, 476 US. 834, 841 (1986)).  Waivers of the sovereign immunity of the United States are not easily established and require a clear statement of intent.  United States v. White Mtn. Apache Tribe, 537 U.S. 465, 472 (2003).  The principle applies even to determination of the scope of explicit waivers.  *See, e.g.,* United States v. Nordic Village, Inc., 503 U.S. 30, 34 (1992).  Moreover, "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."  Lane v. Peña, 518 U.S. 187, 192 (1996).

In bringing their claim, Plaintiffs apparently rely upon the waiver of sovereign immunity contained in the judicial-review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06, more specifically Paragraph 706(1), *see* Complaint at ¶¶ 1 & 26, which authorizes a reviewing court to compel a federal agency to take an action that is "unlawfully withheld."  5 U.S.C. § 706(1).

**PROCEDURAL BACKGROUND**

Plaintiffs ask the Court to interject itself into the administrative process in which the Forest Service is engaged and compel the agency to complete a land exchange ("Land

Exchange") pursuant to congressional direction contained in an omnibus public-lands bill, Sec. 1206, Pub. L. No. 111-11 (2009)("Act"), that calls upon the agency to transfer National Forest System land it administers on the south side of Mt. Hood, near Government Camp ("Federal land"), in exchange for land that Mt. Hood Meadows ("MHM") currently owns on the north side of the mountain ("non-Federal land"), if MHM offers to convey that non-Federal land to the Forest Service. Sec. 1206(a)(2)(A), 123 Stat. 1018 (2009)("Subject to the provisions of this subsection, <u>if</u> [MHM] offers to convey to the United States all right, title, and interest of [MHM] in and to the non-Federal land, the [Forest Service] shall convey to [MHM] all right, title, and interest of the United States in and to the Federal land (other than any easements reserved under subparagraph (G), subject to valid existing rights"). The Act also contains language expressing the Congress's wishes with respect to a time frame for completion of the Land Exchange, which states that "[i]t is the intent of Congress that the [Land Exchange] shall be completed not later than 16 months after" its enactment, or by July 30, 2010. Sec. 1206(a)(2)(F), 123 Stat. 1019 (2009). It is this provision on which essentially the entirety of Plaintiffs' claim in this case rests, as it hinges on their request that this Court compel the Forest Service to complete the Land Exchange. Two other provisions of the Act bear mentioning in laying out the procedural background relevant to this motion. The first sets forth the requirement in the Act for the Forest Service to develop and reserve a wetlands conservation easement ("Easement") that will serve to protect some wetlands that exist on the federal parcel to be transferred to MHM. More specifically, the relevant portion of the Act provides as follows:

> As a condition of the conveyance of the Federal land, the [Forest Service] shall reserve a conservation easement to the Federal land to protect existing wetland, as identified by the Oregon Department of State Lands, that allows equivalent wetland mitigation measures to compensate for minor wetland encroachments necessary for the orderly development of the Federal land.

Page 3 – DEFENDANTS' MOTION TO DISMISS
    *Hood River Valley Residents Comm. v. Forest Serv.,* Case No. 15-cv-1397-BR

Sec. 1206(a)(2)(G)(i), 123 Stat. 1019.

The second is a clause that further unequivocally states that "[t]he conveyance of the Federal land and non-Federal land shall be subject to such terms and conditions as the [Forest Service] may require." Sec. 1206(a)(2)(C)(ii), 123 Stat. 1019 (2009).

Shortly after Plaintiffs filed their Complaint, the parties conferred on a case management framework and schedule. Jt. Case Mgmt. Rpt. (Dkt. #7). The parties discussed and agreed on the potential benefits of affording the Forest Service and MHM the opportunity to meet outside the context of this litigation to continue to pursue further implementation of the steps necessary to complete the Land Exchange. *Id.* at 3. In particular, the Forest Service and MHM indicated their intent to meet for the purpose of having further discussions regarding the terms and conditions of the Wetlands Conservation Easement that the Act prescribes the agency to reserve as a condition of conveying the Federal land to MHM. *Id.* Those discussions have occurred, culminating in a mediation in which Justice Susan Leeson served as the mediator and the Forest Service and MHM worked through all of the remaining outstanding issues concerning the easement. They are working on a joint statement to report on the results of the mediation, and they will share it when it is in final form with the parties to the litigation.

**ARGUMENT**

I. <u>THE STATUTORY PROVISION ON WHICH PLAINTIFFS PREMISE THEIR "FAILURE TO ACT" CLAIM DOES NOT GIVE RISE TO THE KIND OF MANDATORY DUTY THAT A COURT MAY COMPEL THE FOREST SERVICE TO UNDERTAKE PURSUANT TO ITS AUTHORITY IN SECTION 706(1).</u>

The APA authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). In the seminal case on 5 U.S.C. § 706(1), the Supreme Court made clear that the only kind of "agency action" the provision authorizes a reviewing court to compel an agency to take, however, is a discrete, mandatory duty that is

plainly required by statute or regulation.  Norton v. Southern Utah Wilderness Alliance ("SUWA"), 542 U.S. 55, 62–63 (2004).  In addition, "Section 706(1) of the APA ... serves important interests, but [it] does not give us license to 'compel agency action' whenever the agency is withholding or delaying an action we think it should take."  Hells Canyon Pres. Council v. Forest Serv., 593 F.3d 923, 932 (9th Cir.2010)("HCPC").  Rather, a reviewing court's authority to "compel agency action" is "carefully circumscribed to situations where an agency has ignored a specific ... command," id., that is located in a federal statute or "agency regulation[] that ha[s] the force of law," SUWA, 542 U.S. at 65 (2004).  Moreover, the "purportedly withheld action must not only be 'discrete,'" HCPC, 593 F.3d at 932, meaning that it must be a "precise, definite act," SUWA, 542 U.S. at 63, "but also 'legally required,' " 593 F.3d at 932, meaning that the text of the statute or regulation contains an "unequivocal command" about which an official has "no discretion whatever," 542 U.S. at 63 (internal quotation marks omitted), such that the duty "could traditionally have been enforced through a writ of mandamus."  HCPC, 593 F.3d at 932.

> A. The Language of Section 1206(a)(2)(F) upon which Plaintiffs base their claim simply is not framed in terms of an unequivocally expressed mandatory duty that the Court may compel within the ambit of its Jurisdiction under Section 706(1).

The key language in Section 1206(a)(2)(F) on which Plaintiffs' claim hinges is set forth as an expression of congressional intent or its expectation, not as a mandatory duty that this Court may compel, for several reasons.  First and foremost, as noted above, the provision contains the prefatory statement, "[i]t is the intent of Congress that" the Land Exchange shall be completed within 16 months of the Act's enactment, and this prefatory statement is a difference that compels a major distinction in the provision's overarching interpretation.  Sec. 1206(a)(2)(F), 123 Stat. 1019 (2009).  This follows for several reasons.

Page 5 – DEFENDANTS' MOTION TO DISMISS
    *Hood River Valley Residents Comm. v. Forest Serv.,* Case No. 15-cv-1397-BR

First, simply on the face of things and based on common sense, it is quite obvious that it is altogether different when making any type of declarative statement to direct another over whom one has authority to dictate their actions to say that "it is my intent" that the other complete a task by a date certain, and to say simply that they shall complete the task by that same date certain.  Indeed, the dictionary supports this common understanding of such a distinction by providing that the two alternative primary definitions of "intent" are:  "the act or fact of intending :  purpose" and "the state of mind with which an act is done :  volition." http://www.merriam-webster.com/dictionary/intent (last visited Oct. 6, 2015).  Neither one of these supports Plaintiffs' position that Section 1206(a)(2)(F) is an unequivocally expressed mandate of the Congress that this Court may simply compel as if it were exercising its mandamus authority.

This distinction is further supported even by the other language within the same statutory section, which clearly evinces that, when the Congress wishes to express itself in a more mandatory way, it knows how to do so by simply stating that the agency "shall" do something, without prefatory language like that which accompanies the language in Section 1206(a)(2)(F). *See, e.g.,* Sec. 1206(a)(2)(G)("As a condition of the conveyance of the Federal land, the [Forest Service] shall reserve" the two easements specified in the Act in accordance with prescribed standards and criteria (emphasis supplied); *see also* Sec. 1206(a)(2)(C)(ii)("The conveyance of the Federal land and non-Federal land shall be subject to such terms and conditions as the [Forest Service] may require")(emphasis supplied).

This distinction is also evident in other contexts and confirms that, when Congress wishes to mandate that an agency undertake a particular action, it knows how to do so.  Indeed, this is evident in the "deadline example" that the Supreme Court provided for context in its SUWA

Page 6 – DEFENDANTS' MOTION TO DISMISS
    *Hood River Valley Residents Comm. v. Forest Serv.,* Case No. 15-cv-1397-BR

opinion, when it explained that the statutory provision stating that, "[w]ithin 6 months after February 8, 1996, the [FCC] shall complete all actions necessary to establish regulations to implement the requirements of this subsection," 47 U.S.C. § 251(d)(1)(emphasis supplied), "would have supported a judicial decree under the APA requiring the prompt issuance of regulations, but not a judicial decree setting forth the content of those regulations." SUWA, 542 U.S. at 65. In like fashion, courts have relied upon similar unadorned "shall" pronouncements in certain statutory deadlines contained within the Endangered Species Act in cases challenging the failure of consulting agencies to meet such deadlines for the listing of species and the completion of related duties under that statute. *See, e.g.,* Oregon Natural Res. Council, Inc. v. Kantor, 99 F.3d 334, 338-39 (9th Cir. 1996). In other words, "shall," by itself in a statute, usually means just what it says: "shall," but when prefaced with, "It is the intent of the Congress that something shall happen," it is not the same at all, and should not be treated as if it is.

In sum, then, the plain meaning of the very text of the relevant statutory provision on which Plaintiffs' claim is based does not and cannot support a finding that this Court has jurisdiction over that claim.

> B.   Not Only is the Time Frame in the Act Not Framed in terms of a mandatory duty under 706(1), Neither is the Nature of the Duty to Complete the Land Exchange Itself given that it requires two parties to complete and the statutory language makes the Forest Service's conveyance conditional on Mt. Hood Meadows's independent action of offering to convey the non-Federal Land.

Even if the Court were to read the language in Sec. 1206(a)(2)(F) as giving rise to a hard-and-fast mandatory deadline, it would still lack subject-matter jurisdiction over Plaintiffs' claim for the plain and simple fact that they "agency action" it is attempting to have the Court compel is not an action of an agency – the Forest Service – or, more accurately, not completely the action of the Forest Service, at all. This follows because the action is a land exchange, which, by

necessity, requires two parties to complete, not just the Forest Service.  Indeed, Plaintiffs' claim is nothing less than the equivalent of trying to compel a person to clap, with just one hand.

    Relevant case law supports this interpretation.  Undersigned counsel is aware of no cases in which a court compelled an agency to take an action under the aegis of Section 706(1) that involved something beyond the scope and authority of just the agency itself.  As the Ninth Circuit recently explained in recapitulating the parameters prescribed for a proper 706(1) claim under SUWA, a court can only compel agency action under this section "if there is 'a specific, unequivocal command' placed on the agency to take a 'discrete agency action,' and the agency has failed to take that action."  Vietnam Veterans of American v. CIA, 791 F.3d 1122, 1128 (9th Cir. 2013)(quoting SUWA, 542 U.S. at 63-64)(emphasis supplied).  Here, the action that Plaintiffs are seeking to have the Court compel the Forest Service – the completed Land Exchange -- can only be effectuated with the involvement of another party, MHM, and its conveyance of the non-Federal land at issue.  MHM is not a federal agency, obviously, and so is not subject to the APA.  In addition, in American Farm Bureau v. EPA, 121 F. Supp. 2d 84, 103 (D.D.C. 2000), the court found that a claim under 706(1) did not lie because the statutory directive at issue only "require[d] EPA to issue a data call-in 'if' the agency determines that additional data "are reasonably required to support the continuation of a tolerance or exemption" or "are required to maintain in effect an existing registration of a pesticide."  Similarly, in this case, the Forest Service need only carry out the land exchange "if" Mt. Hood Meadows offers to convey the non-Federal parcel.

    The language of the Act also supports this position, for it explicitly provides that the obligation of the Forest Service to convey the Federal land subject to the Land Exchange is conditioned upon MHM's offering to convey the non-Federal land.  That is, in relevant part, Sec.

1206(a)(2)(A) states that, "if [MHM] offers to convey to the United States" the non-Federal land, the Forest Service "shall convey to [MHM]" the Federal land." 123 Stat. 1018. Although the parties have entered into an Agreement to Initiate, see Exh. 1, nothing in that agreement represents a firm, final offer on the part of MHM to convey the non-Federal land at issue, nor are Defendants aware of any other communication or correspondence that constitutes any such offer. Exh. 1 at 3 ("Either the non-Federal party or the Forest Service may withdraw from the exchange at any time prior to execution of the exchange agreement, or conveyance from the United States, except as required by the Act"). Now that MHM is a party to this action, however, Defendants would welcome any clarification or correction of this fact that MHM may wish to provide to the Court if their understanding may be in error in any way.

Thus, even if the time frame identified in the Act could be construed as mandatory, which for the reasons elucidated in the previous section it cannot, the action that Plaintiffs are asking the Court to compel the Forest Service to take is not something they can carry out on their own. Hence, Plaintiffs' claim is misguided and not a proper subject for compulsion under 706(1). It does indeed still take two to tango (or engage in a land exchange, as the case may be).[1]

    C.    Interpretation of the Act in the Manner Proposed by Plaintiffs Should Also Be Rejected as Inherently Unrealistic.

The Act itself provides that the Land Exchange is to be carried out in accordance with the requirements that ordinarily apply to federal land exchanges as set forth in Sec. 206 of the

---

[1] For the same reasons, neither can Plaintiffs prevail even if they were to seek to frame their claim as one based on the Forest Service's alleged "unreasonable delay" in carrying out its portion of the Land Exchange. In SUWA, the Supreme Court stated that, although section 706(1) of the APA "also authorizes courts to 'compel agency action ... unreasonably delayed' – [] a delay cannot be unreasonable with respect to action that is not required." SUWA, 542 U.S. at 63 n. 1 (emphasis supplied). Thus, because the Act does not create the mandatory duty in the first place, it cannot serve as the predicate for an "unreasonable delay" claim, either.

Page 9 – DEFENDANTS' MOTION TO DISMISS
    *Hood River Valley Residents Comm. v. Forest Serv.*, Case No. 15-cv-1397-BR

Federal Land Policy and Management Act of 1976 ("FLPMA"), 43 U.S.C. § 1716.  Sec. 1206(a)(2)(B), 123 Stat. 1018 (2009).  In addition, the Act provides that the appraisal to be conducted of both the Federal and non-Federal land that are the subject of the Land Exchange is to be "conducted in accordance with nationally recognized appraisal standards, including the Uniform Appraisal Standards for Federal Land Acquisitions; and the Uniform Standards of Professional Appraisal Practice."  Sec. 1206(a)(2)(D), 123 Stat. 1019 (2009).  The Act also requires that the Forest Service prepare and reserve two easements on which it is to condition its conveyance of the Federal land to MHM, including the one to protect existing wetland on the Federal land.  Sec. 1206(a)(2)(G), 123 Stat. 1019 (2009).  Thus, the Act waives none of the principal requirements or steps that are necessary to complete in effectuating a federal land exchange, which, even under normal and non-controversial scenarios, involve a series of rather technical, arcane, and labor-intensive processes; and with respect to this one, the Congress even added an extra step (reservation of the easements).  Moreover, even though this is a legislatively directed Land Exchange, the Forest Service has published a Notice of Intent to prepare an Environmental Impact Statement pursuant to the National Environmental Policy Act to analyze the environmental effects of the exchange.  75 Fed. Reg. 62,755 (Oct. 13, 2010).  That an exchange of this magnitude could realistically be completed within 16 months from the date of the Act's enactment, as Plaintiffs' position necessarily contends the Congress expressly mandated in the terms of the Act, is difficult to square with these multiple, complex, and overlapping processes.  Such a recognition is also borne out by the Agreement to Initiate ("ATI") that the parties prepared, which included an implementation schedule that spanned more than two and one-half years.  *See* Exh. 1 at 18-20.

As a result, the construction of an unconditional, mandatory 16-month time frame that Plaintiffs urge the Court to place on the Act suffers from the additional flaw that it would have the Court construe the Act in a way that ignores the normal federal land-exchange processes, which the Act expressly dictates be followed.  In addition, such a construction might well preclude the Forest Service from carrying out a full NEPA analysis of the Land Exchange, which would benefit the public interest and which the Congress gave no indication it wished the Forest Service not to also incorporate into its work of implementing its portion of the exchange.

D.   The Forest Service Continues To Engage in Ongoing Substantial & Good-Faith Efforts to Implement the Land Exchange & Considerable Progress Has Been Made, Even Though the Agency Had Planned to Be Farther Along By This Time.

Even if the Court were to construe the Act as containing an unequivocal and mandatory duty that would otherwise give it the authority to issue an order compelling the Forest Service to carry out the Land Exchange (potentially over the objection of MHM, presumably), the Court would nevertheless still lack jurisdiction over Plaintiffs' claim because the Forest Service has made considerable progress on its end to implement the Land Exchange.  In the Ninth Circuit, the court has made clear that a reviewing court should stay its hand from compelling an agency to undertake an action in the absence of a "complete failure to act" on the part of the agency. Ecology Ctr., Inc. v. Forest Serv., 192 F.3d 922, 926 (9th Cir. 1999)(court finding judicial review is permitted under section 706(1) "only where there has been a genuine failure to act").

Here, as noted in the Joint Rule 16 Case Management Report that the parties filed recently, the step on which the Forest Service has been continuing to work is the preparation of a wetlands conservation easement that the Act prescribes the agency to reserve and include as a condition to its conveyance of the Federal land to MHM.  Jt. Case Mgmt. Rpt. at 3 (Dkt. #7). More specifically, the parties stated in that report that they filed in late August that "Defendants

and [MHM] have discussed their intent to meet in the next 30 days for the purpose of having further discussions regarding the terms and conditions of the legislatively-mandated conservation easement that is to be reserved for wetlands that exist on the federal lands to be conveyed to [MHM] under the land exchange at issue." *Id.* The Forest Service and MHM have followed up by meeting and having regular discussions through their counsel and then, last Wednesday, Sept. 30, 2015, by engaging in mediation presided over by mediator Susan Leeson, a former Oregon Supreme Court justice. The Forest Service and MHM are still working on a joint statement to announce the results of the mediation, which they will share when it is finalized, but the Forest Service would simply state for purposes of the present memorandum that the parties discussed all of the remaining issues that were still outstanding with respect to the Wetlands Conservation Easement and it appears as if they have arrived at mutually satisfactory easement terms. Once a conditionally final version of the Wetlands Conservation Easement is prepared (conditional because it will be subject to the agency's NEPA analysis), it will provide a basis upon which to conduct the appraisal and be able to be incorporated into the Proposed Action for the Forest Service's NEPA analysis.

Conclusion

For the foregoing reasons, Defendants respectfully submit that this Court lacks jurisdiction over Plaintiffs' claim and that it therefore should dismiss this action with prejudice given that there is no feasible way for Plaintiffs to be able to cure the jurisdictional defect.

Respectfully submitted this 6th date of October 2015.

/s/ Stephen J. Odell
Stephen J. Odell
Assistant United States Attorney
 Of Attorneys for Defendants