**BILLY J. WILLIAMS, OSB # 901366**
United States Attorney
**STEPHEN J. ODELL, OSB # 903550**
Assistant United States Attorney
steve.odell@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204
Telephone: (503) 727-1024
Fax: (503) 727-1117
  Of Attorneys for Defendants

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| HOOD RIVER VALLEY RESIDENTS COMMITTEE, an Oregon non-profit corporation, MIKE MCCARTHY, individually, HOOD RIVER COUNTY by and through the BOARD OF COUNTY COMMISSIONERS OF HOOD RIVER COUNTY, an Oregon municipal corporation, CLACKAMAS COUNTY, by and through the BOARD OF COUNTY COMMISSIONERS OF CLACKAMAS COUNTY, an Oregon municipal corporation, and MT. HOOD MEADOWS OREGON, LLC, an Oregon limited liability corporation. | Case No.: 3:15-cv-01397-BR |
| | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO THE ADMINISTRATIVE PROCEDURE ACT** |
| *Plaintiffs,* | **Oral Argument Respectfully Requested** |
| v. | |
| JIM PEÑA, Regional Director of Region 6 of the Forest Service; LISA NORTHROP, Supervisor, Mt. Hood National Forest; THOMAS L. TIDWELL, Chief of the Forest Service; & the FOREST SERVICE, an agency of the U.S. Dept. of Agriculture, | |
| *Defendants.* | |

MOTION

Pursuant to 5 U.S.C. § 706(1) of the Administrative Procedure Act ("APA") and for the reasons set forth in the memorandum below that is being filed in conjunction with this motion in accordance with LR 7-1(c), Defendants hereby respectfully move for summary judgment on the only remaining, undismissed claim in the above-captioned action.  In short, that claim asserts that Defendants have "unreasonably delayed" (as that term is used in the APA) carrying out what Plaintiffs purport to be discrete, mandatory, and unconditional actions to implement a congressionally directed and conditioned exchange of federal property within the Mt. Hood National Forest for private land and personal property that Plaintiff Ht. Hood Meadows Oregon, LLC ("MHM") owns (hereafter, "Land Exchange"), as prescribed in Section 1206 of the Omnibus Public Land Management Act of 2009 ("Act"), AR 9115-9580.  On the basis of such allegations, Plaintiffs seek an order from this Court compelling the Forest Service to perform such actions, specifically described in their Complaint as:  (1) to complete the Land Exchange; and (2) to prepare a wetlands conservation easement consistent with the requirements of the Act.  Pursuant to LR 7-1(a)(1), undersigned counsel for Defendants certifies that he has conferred with counsel for Plaintiffs about the relief sought by their unreasonable delay claim that is the subject of the present motion and that, although the parties have explored settlement of the issues underlying that claim, and have exchanged several iterations of a proposal to resolve such issues, they have not come to terms on any agreement to date.  Undersigned counsel would add that he does not believe their eventually doing so is out of the question, however, and he therefore intends to continue

exploring whether the parties can reach a mutually acceptable compromise on the remaining unresolved issues reflected in the current version of the settlement proposal.

Defendants are entitled to summary judgment pursuant to the APA on Plaintiffs' "unreasonable delay" claim for the following primary reasons, each of which Defendants expound further upon in their memorandum below. As an initial matter, with respect to preparation of a wetlands conservation easement that the Act directs the Forest Service to reserve on the federal parcels involved in the Land Exchange, the administrative record reflects that the Forest Service has actually completed several iterations of such an easement that it believes have been consistent with the terms of the Act, including the current version, which contains terms that are mutually satisfactory to both it and MHM. In addition, preparation of a wetlands conservation easement is not an "agency action" that the Court can compel under the authority provided in 5 U.S.C. § 706(1) in any event.

Next, with respect to completion of the Land Exchange, several reasons compel summary judgment in Defendants' favor. First, while Defendants acknowledge that the Forest Service's unilateral transfer to MHM of the federal parcels involved in the Land Exchange might well be considered an "agency action" this Court could compel under 5 U.S.C. § 706(1), the exchange of such parcels for the non-Federal parcels involved in the Land Exchange between the Forest Service and MHM, which is the action that Plaintiffs ask this Court to compel, by definition cannot be, notwithstanding Plaintiffs' allegations in the Complaint. Second, it must also be remembered in this context that the Forest Service's transfer of the federal parcels to MHM as directed by the Act is subject to several conditions that the Act also requires be met, but which have not yet all been satisfied, again, notwithstanding Plaintiffs' allegations in the Complaint to the contrary.

Thus, ironically, for the Court to compel the Forest Service and MHM to engage in the Land Exchange at this juncture would result in violation of certain terms of the very Act that Plaintiffs argue they wish to see fully implemented by their "unreasonable delay" claim.  Third, none of the other necessary conditions precedent to the Forest Service's duty to transfer the Federal parcels to MHM or sub-steps that need to be completed to effectuate the Land Exchange (like contracting for an appraisal) are "agency actions" within the meaning of the APA and several are not entirely within the control or authority of the Forest Service.  Fourth, notwithstanding the fact that the Land Exchange comprises more than 60 interrelated steps, even if the Court were to consider "completion of the Land Exchange" as a unitary, discrete, mandatory, and unconditional "agency action" it could compel under 5 U.S.C. § 706(1), the Forest Service has not engaged in "unreasonable delay" within the meaning of that provision in the efforts it has taken to proceed with implementation of the exchange.  Indeed, the agency has completed 30-some steps to implement the Land Exchange and is operating under a reasonable implementation schedule to see it through to completion; under such circumstances, it simply cannot be said that the agency has engaged in the type of recalcitrance or stubborn unwillingness to abide by a congressional directive that would justify the Court's intervention pursuant to Section 706(1), which the Supreme Court and Ninth Circuit both have emphasized are reserved for very narrow sets of circumstances, indeed.  Fifth, and finally, neither do a fair and judicious application of the so-called TRAC factors justify the Court's exercising of its authority to compel the Forest Service and MHM to complete the Land Exchange by some unspecified future "date certain," as Plaintiffs seek

in their Complaint, particularly where the agency is working under a concrete schedule that it has shared with MHM for its completion, in the absence of any judicial compulsion.

MEMORANDUM IN SUPPORT OF MOTION

**FACTUAL BACKGROUND**

As noted above, Plaintiffs ask the Court to interject itself into the administrative process in which the Forest Service continues to be engaged and compel the agency to complete the Land Exchange pursuant to congressional direction contained in an omnibus public-lands bill, Sec. 1206, Pub. L. No. 111-11 (2009)("Act"), that calls upon the agency to transfer National Forest System land it administers on the south side of Mt. Hood, near Government Camp ("Federal land"), in exchange for land that MHM currently owns on the north side of the mountain ("non-Federal land"), if MHM offers to convey that non-Federal land to the Forest Service.  Sec. 1206(a)(2)(A), 123 Stat. 1018 (2009)("Subject to the provisions of this subsection, if [MHM] offers to convey to the United States all right, title, and interest of [MHM] in and to the non-Federal land, the [Forest Service] shall convey to [MHM] all right, title, and interest of the United States in and to the Federal land (other than any easements reserved under subparagraph (G), subject to valid existing rights").  The Act also contains language expressing the Congress's wishes with respect to a time frame for completion of the Land Exchange, which states that "[i]t is the intent of Congress that the [Land Exchange] shall be completed not later than 16 months after" its enactment, or by July 30, 2010.  Sec. 1206(a)(2)(F), 123 Stat. 1019 (2009).

Two other provisions of the Act bear mentioning in laying out the factual history relevant to this motion.  The first sets forth the requirement in the Act for the Forest Service to develop and reserve a wetlands conservation easement ("Wetlands

Conservation Easement") that will serve to protect some wetlands that exist on the
Federal land to be transferred to MHM. More specifically, the relevant portion of the Act
provides as follows:

> As a condition of the conveyance of the Federal land, the [Forest Service]
> shall reserve a conservation easement to the Federal land to protect
> existing wetland, as identified by the Oregon Department of State Lands,
> that allows equivalent wetland mitigation measures to compensate for
> minor wetland encroachments necessary for the orderly development of
> the Federal land.

Sec. 1206(a)(2)(G)(i), 123 Stat. 1019.

The second is a clause that further unequivocally states that "[t]he conveyance of
the Federal land and non-Federal land shall be subject to such terms and conditions as the
[Forest Service] may require." Sec. 1206(a)(2)(C)(ii), 123 Stat. 1019 (2009).

The Act containing the Land Exchange was passed by the 111th Congress and
Pres. Obama signed the Act into law on Mar. 30, 2009. AR 9115-9580. The Forest
Service went to work straightaway to implement the necessary steps to effectuate the
Land Exchange. Indeed, in the interests of providing a broad overview of the agency's
efforts in this regard, from May 2009, approximately seven weeks after the Act was
enacted up through the current month, covering a span of some 82 months or nearly
seven years, the Forest Service has engaged in activity to implement the Land Exchange
every single one of those months. *See, e.g.,* AR 9585-89 (requesting Preliminary Title
Commitment for non-Federal lands involved in Land Exchange)(May 26, 2009); AR
9669-77 (Letter from Mt. Hood Forest Supervisor to Regional Forester requesting
assistance to determine amount of agency funding available to pursue the Land Exchange
and 41 other provisions of the Act); AR 9694-95 (letter requesting serialization and
segregation, and revocation of withdrawals on Federal lands pursuant to Federal Land

Policy and Management Act)(July 13, 2009); AR 9778-85 (e-mail messages re: payment for preparation of initial iteration of Land Description Verifications)(Aug. 13, 2009); AR 9842-43 (letter from Mt. Hood Forest Supervisor to MHM following up on meeting to discuss Land Exchange and to lay out steps that had been initiated)(Sept. 17, 2009); AR 9999 (e-mail exchange regarding initial site inspection for archaeological issues on Federal parcels)(Oct. 19, 2009); AR 10090 (letter from Forest Service to District 3 Water Master requesting the status of any valid water rights and/or wells on non-Federal lands in Hood River County)(Nov. 9, 2009); AR 10478-79 (e-mails regarding receipt of draft wetlands report that Forest requested to assist in preparation of Wetlands Conservation Easement)(Dec. 8, 2009); AR 10796-99 (memorandum from Mt. Hood Forest Supervisor to Regional Appraiser requesting valuation consultation for Land Exchange)(Jan. 20, 2010); AR 10909-49 (Land Exchange Valuation Consultation)(Feb. 22, 2010); AR 11054 & 11055-68 (cover e-mail and accompanying updated draft Land Exchange Feasibility Analysis)(Mar. 9, 2010); AR 11282-85 (e-mail following up with Hood River County on ownership of crescent-shaped parcel on non-Federal land)(Apr. 6, 2010).

In addition, the record is replete with completion of many of the key documents and instruments that form the essential building blocks of the Land Exchange.  For example, on May 26, 2009, the Forest Service requested a Preliminary Title Commitment on the non-Federal lands to be included in the Land Exchange, and the other two Mt. Hood land exchanges prescribed by the Act.  AR 9585-89.  The Preliminary Title Report was completed on May 29, 2009.  AR 9601-14.  On June 1, 2009, the Forest Service completed an initial draft of the Agreement to Initiate ("ATI") setting forth the broad outline and parameters under which the agency and MHM would indicate how they

intended to proceed in implementing the Land Exchange.  AR 9615-21.  On May 28,

2010, the Regional Office for the Pacific Northwest Region of the Forest Service

indicated that it had conducted a review of the draft feasibility analysis report and draft

ATI that the Mt. Hood National Forest had prepared for the Land Exchange.  AR 11798-

11806.  The report the Regional Office issued based on its review identified lists of

actions items that would need to be addressed before the Forest Service could execute a

final ATI and before it could undertake an environmental analysis pursuant to NEPA or

initiate the appraisal process for the Land Exchange.  AR 11804-05.  On Aug. 19, 2010,

and after sharing multiple iterations, the Forest Service and MHM executed a mutually

acceptable version of the ATI.  AR 12692-12712.  Among other things, as finally

executed, the ATI sets forth a complete description of the properties to be exchanged and

includes a plan to value the properties, including conducting a timber cruise of the

forestland on both the north and south sides of Mt. Hood.  The ATI also provides for a

reservation "on the wetlands as outlined in Section 1206(a)(2)(G)(i) of the Omnibus Act."

The ATI provides that, prior to the parties' subsequent execution of a separate Exchange

Agreement, no action taken shall create or establish any contractual or other obligations

against either the Forest Service or MHM.  AR 12692.  In addition, the ATI contains an

Implementation Schedule that sets forth all 64 steps the completion of all of which is

necessary to complete the Land Exchange. AR 12707-09.

     On June 5, 2009, the Forest Service completed the initial iteration of a Federal

Land Status Report ("FLST") for the Federal parcels subject to the Land Exchange.  AR

9635-37.  On June 6, 2009, the Forest Service prepared its initial version of an

Encumbrance Evaluation Report ("EER") for the non-Federal parcels involved in the

Land Exchange to identify any potential encumbrances on the title to such properties that need to be cleared or otherwise satisfactorily addressed prior to execution of the Land Exchange.  AR 9647-52.

On June 25, 2009, the Forest Service submitted a procurement request to perform the initial Legal Description Verification ("LDV") for both the Federal and non-Federal parcels involved in the Land Exchange to review the descriptions of such parcels in the Act for accuracy and to verify the specific acreage each comprises.  AR 9685-93.  On July 22, 2009, the initial version of the LDV for both the Federal and non-Federal parcels involved in the Land Exchange was completed.  AR 9753-62 & AR 9769-71.  The LDVs for each parcel has been updated several times since this original iteration, and will continue to need to be updated as necessary until the Land Exchange is executed.

On July 23, 2009, the Forest Service requested that a Mineral Report be prepared for the Federal lands involved in the Land Exchange.  AR 9772.  On Sept. 11, 2009, the Forest Service ordered a Phase 1 Environmental Site Assessment ("ESA") to be completed on the Federal lands involved in the Land Exchange to inspect and evaluate the parcels for hazardous materials.  AR 9791-9839.  On Nov. 20, 2009, the Phase I ESA was completed for the Cooper Spur Mountain Resort, which is on the non-Federal lands involved in the Land Exchange.  AR 10272-10440.  On Dec. 29, 2009, the Phase I Environmental Site Assessment was completed for the non-Federal lands involved in the Land Exchange.  AR 10499-10704.  In response to the request of the Forest Service, on Feb. 25, 2010, the Bureau of Land Management completed the serialization and segregation actions for the relevant parcels involved in the Land Exchange.  AR 10985-90.  In April 2010, at the request of the Forest Service, a private contractor issued a

wetland inventory report evaluating the location and functional assessment of wetlands contained on the parcels that are subject to the Land Exchange.  AR 11197-11278.

On Aug. 9, 2010, the Forest Service executed the Land Exchange Feasibility Analysis for the Land Exchange.  AR 12634-50.  The Analysis includes, among other things, a preliminary review of several public benefits that may be provided by the Land Exchange, while going on to note that public benefits will be further analyzed in the EIS being prepared to analyze its effects.  AR 12637.

On Oct. 6, 2010, the Forest Service issued its original scoping notice for the Environmental Impact Statement ("EIS") it is preparing for the Land Exchange.  AR 12795-12800.  The Notice included a deadline of providing feedback on the nature and scope of the issues to be addressed in the EIS of Nov. 27, 2010.  AR 12795.  In response to this Notice, the Forest Service received scoping comments from various individuals and groups on the EIS being prepared for the proposed Land Exchange.  AR 456-531.  In addition, on Oct. 8, 2010, the Forest Service published a Notice of Exchange Proposal, a notice that it published once a week for four consecutive weeks in the Oregonian.  AR 12801 & 12821-24.  More recently, the Forest Service issued an updated scoping notice for the Land Exchange EIS on Feb. 11, 2016.  Exh. E to First Jt. Stat. Rpt. (Dkt. # 26-5).

The Forest Service prepared draft conservation easements and submitted the drafts of the proposed easements to MHM in January 2012 and March 2012, including the Wetlands Conservation Easement that the Act directs it to reserve on the Federal parcels involved in the Land Exchange.  AR 13691, AR 13670-79, & AR 13628.  Again, after multiple iterations and proposed edits suggested by MHM, the Forest Service and MHM were able to arrive at a mutually acceptable version of the statutorily required

Wetlands Conservation Easement on Oct. 5, 2015, in part by enlisting the assistance of mediator Justice Susan Leeson.  AR 18227-36.

The Forest Service and MHM are continuing to meet on a regular basis to review the progress they are making toward implementation of the Land Exchange and to discuss and work out issues that emerge as they continue with their efforts in this regard. *See* 1st Jt. Stat. Rpt. (Dkt. #26) & 2d Jt. Stat. Rpt. (Dkt. #36).

**PROCEDURAL FRAMEWORK**

In response to the Complaint, Defendants filed a motion to dismiss this action based on lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) (Dkt. # 13).  Following oral argument, the Court granted the motion in part and denied it in part (Dkt. # 21).  More specifically, the Court granted that part of Defendants' Motion to Dismiss regarding that part of Plaintiffs' claim asserting that Defendants unlawfully withheld performance of a mandatory duty when the Land Exchange between the Forest Service and MHM was not completed within 16 months of passage of the Act, but denied the motion as to that part of Plaintiffs' claim asserting that Defendants have unreasonably delayed completion of the Land Exchange (Dkt. #21).  In arriving at this ruling, the Court explained from the bench that it was based solely on "whether plaintiffs' allegations plausibly state a claim."  Trans. of Oral Arg. at 20 (attached as Exh. 1); *see also id.* at 13 ("Right now we're talking only about whether the complaint states a claim").  The Court further explained that the standards it applied to the motion to dismiss "required [it] to view the pleadings – the plaintiffs' complaint, that is – accept as true all of the plausible factual assertions, draw inferences reasonable to the plaintiff."  *Id.* at 7.  The Court further clarified that it would need to revisit the issue of whether Plaintiffs could actually

support their claim once an administrative record had been lodged on which it could premise judicial review that could take account of facts and circumstances beyond merely having to accept as true the reasonably plausible allegations in Plaintiffs' complaint. *Id.* at 13 ("Whether the plaintiffs ultimately can make the case that the time has come for the Court to take some specific action still has to be litigated") & 15 ("The question is whether that duty has factually arisen, whether all of the conditions have gotten to the point where the court can enter a declaration or an injunction").

In light of the Court's remarks from the bench clarifying its ruling on Defendants' motion to dismiss and, just as important, the premises on which the Court based its ruling, Defendants' present motion for summary judgment pursuant to the APA serves as the next step in the judicial proceedings of this action wherein Plaintiffs need to meet their burden to show on the record that they have a viable "unreasonable delay" claim and that, even if they can do that, that they are also entitled to summary judgment on the merits of that claim. *See* Lujan v. National Wildlife Federation, 497 U.S. 871, 883-84 (1990). As a result, Defendants' arguments about whether certain necessary conditions precedent to the Land Exchange direction in the Act have been satisfied such that the Forest Service's duty to transfer the Federal Lands involved in the exchange to MHM can be considered to have been triggered, are now pending before the Court for resolution on the merits based on the record that has been lodged with it, and it need not be constrained by having to accept allegations or inferences to the contrary in Plaintiffs' complaint.

**STANDARD OF REVIEW**

The subject-matter jurisdiction of this Court over an action brought against the United States or one of its agencies or instrumentalities, as is the one *sub judice*, is

limited to the terms of consent by the United States.  United States v. Dalm, 494 U.S. 596, 608 (1990)(citing United States v. Mottaz, 476 US. 834, 841 (1986)).  Waivers of the sovereign immunity of the United States are not easily established and require a clear statement of intent.  United States v. White Mtn. Apache Tribe, 537 U.S. 465, 472 (2003). The principle applies even to determination of the scope of explicit waivers.  *See, e.g.,* United States v. Nordic Village, Inc., 503 U.S. 30, 34 (1992).  Moreover, "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."  Lane v. Peña, 518 U.S. 187, 192 (1996).

In bringing their claim, Plaintiffs rely upon the waiver of sovereign immunity contained in the judicial-review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06, more specifically Paragraph 706(1), *see* Complaint at ¶¶ 1 & 26, which authorizes a reviewing court to compel a federal agency to take an action that is "unlawfully withheld."  5 U.S.C. § 706(1).

As the Supreme Court explained in Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55 (2004)("SUWA"), the action that a plaintiff wishes the Court to compel pursuant to the authority provided in 5 U.S.C. § 706(1) must be an "agency action," as that term is defined by the APA, at 5 U.S.C. § 551(13).  *Id.* at 62.  As the Court went on to note in that opinion, that statutory definition "begins with a list of five categories of decisions made or outcomes implemented by an agency – 'agency rule, order, license, sanction [or] relief.'"  *Id.* (emphasis supplied).  The additional phrase at the conclusion of the statutory definition, "or the equivalent or denial thereof, or failure to act," 5 U.S.C. § 551(13), was construed by the Court to encompass only actions of an agency that are "discrete" and congressionally mandated, or failures to take such agency actions.  *Id.* at

62-63. In regard to this latter category of failures to act, the Court noted that "the APA carried forward the traditional practice prior to its passage, when judicial review was achieved through use of the so-called prerogative writs – principally writs of mandamus under the All Writs Act, now codified at 28 U.S.C. § 1651(a)." *Id.* The Court went on to explain in this regard that "[t]he mandamus remedy was normally limited to enforcement of 'a specific, unequivocal command,' the ordering of a 'precise, definite act . . . about which [an official] had no discretion whatsoever.'" *Id.* at 63 (internal citations and quotations omitted). The Court further clarified, in a manner very helpful to the legal analysis the Court will need to undertake in reviewing the present motion, that "§ 706(1) also authorizes courts to 'compel agency action . . . unreasonably delayed' – but a delay cannot be unreasonable with respect to action that is not required." *Id.* at 63 n.1.

The Ninth Circuit recently had occasion to address a petition asking the court to compel a federal agency to take an action in the light of allegedly unreasonable delay in In re Pesticide Action Network N. America, 798 F.3d 809 (9th Cir. 2015)("PAN"). In addressing the petition, the court laid out the black-letter legal principles applicable to such a request. As an initial matter, the court noted that "[i]ssuing a writ of mandamus directing a federal agency to act . . . is an extraordinary remedy justified only in 'exceptional circumstances.'" *Id.* at 813 (internal quotation marks omitted). To emphasize the point, the court explained that such a remedy is justified only "in those rare instances when the agency's delay is 'egregious.'" *Id.* It then set forth the six "TRAC factors" the D.C. Circuit Court of Appeals enunciated in *Telecommunications Research & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984), that the Ninth Circuit

adopted some time ago as helping to guide its inquiries when faced with such issues.

These factors are as follows:

> (1) the time agencies take to make decisions must be governed by a rule of
> reason;
> (2) where Congress has provided a timetable or other indication of the
> speed with which it expects the agency to proceed in the enabling statute,
> that statutory scheme may supply content for the rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation
> are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on
> agency activities or a higher or competing priority;
> (5) the court should also take into account the nature and extent of the
> interests prejudiced by the delay; and
> (6) the court need not find any impropriety lurking behind agency
> lassitude in order to hold that agency action is unreasonably delayed.

*Id.* (block-quoting <u>TRAC</u>, 750 F.2d at 79-80, with citations and internal quotation marks

omitted).

**ARGUMENT**

I.    COMPLETION OF A COMPLEX LAND EXCHANGE INVOLVING MORE
      THAN FIVE DOZEN STEPS BETWEEN TWO PARTIES, ONE OF WHICH IS
      NOT A FEDERAL AGENCY, IS NOT THE TYPE OF DISCRETE "AGENCY
      ACTION" SUBJECT TO JUDICIAL COMPULSION UNDER SECTION 706(1).

As Defendants explained above, one of the two alleged "agency actions" that

Plaintiffs cite in their Complaint that they seek to have the Court compel the Forest

Service to undertake is the "completion" of the Land Exchange.  But completion of the

Land Exchange is not an "agency action" within the meaning of the APA that a

reviewing court may compel under 5 U.S.C. § 706(1), for two principal reasons.

First, the record reflects that the exchange of the Federal parcels for the non-

Federal parcels involved in the Land Exchange cannot constitute an "agency action"

because it necessarily involves the "actions" of two parties (the Forest Service and

MHM), one of which is not a federal agency (MHM).  For example, quite a few of the

steps that need to be carried out in order to complete the Land Exchange at least in part involve parties other than the Forest Service.  AR 12707-09.  In addition, approximately half of the costs necessary to effectuate the Land Exchange are to be borne by MHM, not the Forest Service.  AR 12710.  Moreover, the ATI also provides that, prior to the parties' eventual and mutual execution of a separate and independent Exchange Agreement, no obligation is established for MHM to actually go through with the exchange and either party may withdraw from the exchange at any time prior to its execution, except as required by the Act (which, of course, does not by its express terms purport to bind MHM to participate in the Land Exchange, *see* Sec. 1206(a)(2)(A)(providing that, "if [MHM] offers to convey to the United States" the non-Federal parcels), AR 9142).  AR 12692. But the APA is quite explicit, both in the label attached to "agency action," as well as in how it is defined by the statute, that the action has to be taken (or failed to have been taken) by a federal agency.  *See* 5 U.S.C. § 551(13), (4), (6), (7), (8), & (11)(each definition of which is expressly qualified by having to be the product of an "agency").

Second, completion of the Land Exchange cannot be considered a discrete "agency action" because the record unequivocally indicates that it is actually composed of multiple and myriad steps.  *See* AR 12707-09.  That is to say, one would be hard-pressed to find that an undertaking composed of at least 64 separate and explicit constituent substeps is the kind of "discrete" action that the Supreme Court has held a reviewing court may compel under Section 706(1), particularly when, as noted above, many of these steps are not solely within the control of the Forest Service to be able to effectuate.  *See* SUWA, 542 U.S. at 62-63.

For this reason alone, Defendants are entitled to summary judgment on Plaintiffs'

claim asking the Court to compel the Forest Service to complete the Land Exchange.

II.    NO MANDATORY DUTY FOR THE FOREST SERVICE TO TRANSFER
       THE FEDERAL PARCELS TO MHM AS A PART OF THE LAND
       EXCHANGE HAS BEEN TRIGGERED YET BECAUSE NOT ALL OF THE
       CONDITIONS PRECEDENT TO THE DUTY HAVE BEEN SATISFIED.

As the Court noted or at least intimated during oral argument on Defendants'

motion to dismiss, the Act contains various conditions that must be satisfied before the

Forest Service's duty is triggered to transfer the Federal parcels subject to the Land

Exchange to MHM.  *See* Transcript at 12-13 (attached as Exh. 1).  This acknowledgment

is also borne out by the express terms of the Act itself, most explicitly by the introductory

phrase of Section 1206(a)(2)(A), which states, "[s]ubject to the provisions of this

subsection [a]."  AR 9142.  The other provisions of subsection 1206(a) of the Act contain

various conditions that must be satisfied.  For example, title to the non-Federal land to be

exchanged has to be in a form "acceptable to the Secretary [Forest Service]."  Section

1206(a)(C)(i), AR 9142-43.  In addition, subsection 1206(a) provides that the Land

Exchange "shall be subject to such terms and conditions as the [Forest Service] may

require."  Section 1206(a)(C)(ii), AR 9143.  The Act also provides for the Forest Service

and MHM to jointly select an appraiser to carry out the appraisal of the Federal and non-

Federal parcels subject to the Land Exchange, and that the appraisal the appraiser

ultimately selected carries out "shall be conducted in accordance with nationally

recognized appraisal standards."  Section 1206(a)(D)(i) & (ii), AR 9143.  Moreover, the

Act provides that the Forest Service's conveyance of the Federal parcels involved in the

Land Exchange is conditioned upon the agency's reservation of a Wetlands Conservation

Easement and a trail easement on such parcels.  Section 1206(a)(G), AR 9143.  Nor does

the Act provide for any express waiver of the Forest Service's obligations under the National Environmental Policy Act ("NEPA") or any other responsibilities under the other environmental statutes by which it is bound.

The record unequivocally shows that several of these conditions precedent have not yet been satisfied, including selection of an appraiser, completion of an appraisal in accordance with nationally recognized standards,, preparation of NEPA analysis, or reservation of a trail easement.  With respect to the appraisal, as noted in the parties' First Joint Status Report (Dkt. # 26 & 26-4), the Forest Service has submitted a request for the appraisal, but the parties have not yet selected an appraiser, and thus, no contract has yet been let for the necessary work to be performed.   Moreover, with respect to the trail easement, it represents a quintessential double bind for the Forest Service.  That is, the record reflects that the agency and MHM are continuing to work through various iterations of the trail easement that the Forest Service has prepared, but have yet to come to a final, mutually acceptable version, as they have on the Wetlands Conservation Easement.  *See, e.g.,* AR 15567-70; 1st Jt. Status Rpt. at 3 (Dkt. #26); 2d Jt. Stat. Rpt. at 3 (Dkt. # 36).  The dilemma stems from the fact that the Forest Service is under an obligation to reserve a trails easement pursuant to the provisions of the Act, and thus theoretically could simply dictate the terms of the easement so long as it is consistent with such terms, but if the agency takes such a tack, MHM can simply walk away from the Land Exchange and thus frustrate the overarching direction from the Congress in the Act, which is to complete the Land Exchange.  Regardless, the record shows that several of the prerequisites and conditions to the ability of the Forest Service to transfer the Federal parcels to MHM pursuant to the congressional direction in the Act have not yet

been satisfied, some of which are at least partially outside the control of the agency.

Under these circumstances, the agency's duty to engage in the transfer has not yet been

triggered, and thus, may not be compelled by the Court without contravening the other

obligations the Act imposes upon the Forest Service incident to the exchange.

III.    THE RECORD DOES NOT REFLECT ANY RECALCITRANCE OR
        DELIBERATE EFFORTS TO NOT MAKE PROGRESS IN IMPLEMENTING
        THE LAND EXCHANGE, AND THUS, ANY DELAY DOES NOT RISE TO
        THE LEVEL OF EGREGIOUSNESS NECESSARY FOR THE COURT TO
        COMPEL THE AGENCY TO TAKE ANY PARTICULAR ACTION.

As Defendants explained in the overview they provided above in the Factual

Background section, the Forest Service has undertaken efforts designed to move the

process of implementing the Land Exchange forward in virtually every month since May

2009.  *See* Discussion, supra.  In addition, the Forest Service is working under an updated,

concrete schedule for implementing the Land Exchange.  The Forest Service provided

MHM with an updated implementation timeline at their February 10, 2016 meeting,

which specifies month/year for all primary completion milestones and incorporates all of

the agency's regulatory requirements.  *See* Exh. C to 1st Jt. Status Rpt. (Dkt. #26-3).

This is precisely the type of scenario under which the Ninth Circuit held that judicial

intervention to compel an agency to undertake action even after seven years had passed

since it had received a petition to do so was unwarranted.  *See* PAN, 798 F.3d at 812 &

814.  Nor can such a record support a judicial finding that the agency has simply refused

to act or has engaged in delay that can be characterized as "egregious."  In re Cal. Power

Exch. Corp., 245 F.3d 1110, 1124 (9th Cir. 2001).

This is not to say that the Forest Service does not take seriously the fact that it has

been more than five years since the "intended deadline" in the Act has passed, or that

there might not be isolated instances in the record where it could have acted with greater dispatch or expeditiousness. But, particularly given the multitudinous duties and responsibilities under which it is operating, and relatively limited budgets, particularly since the commencement of the sequestration mandates under recent congressional budgetary agreements, the agency has continued to make progress and is committed to completing the Land Exchange in as expedited a fashion as can be achieved.

IV.    NONE OF THE <u>TRAC</u> FACTORS JUSTIFY THE EXERCISE OF THE COURT'S EXTRAORDINARY AUTHORITY TO COMPEL THE AGENCY TO UNDERTAKE ACTIVITIES ON WHICH IT IS ALREADY MAKING PROGRESS AND WITH WHICH IT CONTINUES TO MOVE FORWARD.

As the Factual Background above establishes, the record reflects that the Forest Service is continuing to make progress and work productively and cooperatively with MHM to implement the steps necessary to completion of the Land Exchange. Particularly in this light, none of the <u>TRAC</u> factors militate in favor of the Court's exercising its extraordinary authority to compel the Forest Service to take affirmative action with which it is already moving forward. Indeed, the only one of the factors of potentially direct applicability to the present scenario is the second one, which speaks to consideration of any particular timetable that the Congress has provided to inform the Court's evaluation of what is "reasonable" under the circumstances. Here, of course, the Act states that "[i]t is the intent of Congress that the [Land Exchange] shall be completed not later than 16 months after the date of enactment of this Act." Section 1206(a)(2)(F), AR 9143. But, as the Court has already determined in addressing that provision of the Act, the deadline therein expressed is only designed to work as "an aspirational goal." Transcript at 6 (attached as Exh. 1)(going on to explain that the language is "intended to

potentially motivate the parties to move quickly consistent with the 'as soon as is practicable' language, relative to the duty to select an appraiser or conduct an appraisal").

Thus, application of the <u>TRAC</u> factors do not weigh in favor of this Court's compelling the Forest Service to take any particular agency action, either.

<u>Conclusion</u>

For the foregoing reasons, Defendants respectfully request that the Court enter summary judgment in their favor on the unreasonable delay claim pursuant to the APA and on the basis of the administrative record lodged with the Court.

Respectfully submitted this 28th day of March 2016.

BILLY J. WILLIAMS, OSB # 901366
United States Attorney

s/ Stephen J. Odell
STEPHEN J. ODELL, OSB # 903550
Assistant United States Attorney
steve.odell@usdoj.gov
 Of Attorneys for Defendants