**RALPH O. BLOEMERS, OSB # 984172**
ralph@crag.org - (503) 525-2727
**CHRISTOPHER G. WINTER, OSB # 984355**
chris@crag.org - (503) 525-2725
Crag Law Center
917 SW Oak Street, Suite 417
Portland, OR 97205
Fax: (503) 296-5454
*Attorneys for Plaintiffs Hood River Valley Residents Committee & Mike McCarthy*

**JONATHAN RADMACHER, OSB# 924314**
jradmacher@mcewengisvold.com
McEwen Gisvold LLP
1100 SW 6th Ave Ste 1600
Portland, Oregon 97204
Tel. (503) 412-3522
Fax: (503) 243-2687
*Attorney for Plaintiff Mt. Hood Meadows*

**WILFORD K. CAREY, OSB# 720477**
wcarey@gorge.net
Annala, Carey, Baker, Thompson and Van Koten, P.C.
305 Cascade Ave.
Hood River, Oregon 97031
Tel. (541) 386-1811
Fax: (541) 386-6242
*Attorney for Plaintiff Hood River County*

**STEPHEN MADKOUR, OSB# 941091**
smadkour@clackamas.us (503) 655-8362
Clackamas County Counsel
2051 Kaen Road, Suite 460
Oregon City, Or 97045
Tel. (503) 655-8362
Fax: (503) 742-5397
*Attorney for Plaintiff Clackamas County*

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| HOOD RIVER VALLEY RESIDENTS COMMITTEE, an Oregon non-profit corporation, MIKE MCCARTHY, individually, HOOD RIVER COUNTY by and through the BOARD OF COUNTY COMMISSIONERS OF HOOD RIVER COUNTY, an Oregon municipal corporation, CLACKAMAS COUNTY, by and through the BOARD OF COUNTY COMMISSIONERS OF CLACKAMAS COUNTY, an Oregon municipal corporation, and MT. HOOD MEADOWS OREGON, LLC, an Oregon limited liability corporation.<br><br>*Plaintiffs,*<br><br>v.<br><br>JIM PEÑA, Regional Director of Region 6 of the United States Forest Service; LISA NORTHROP, Supervisor, Mt. Hood National Forest of the United States Forest Service; THOMAS L. TIDWELL, Chief of the United States Forest Service; and the UNITED STATES FOREST SERVICE, an Administrative Agency of the United States Department of Agriculture,<br><br>*Defendants.* | Case No.: 3:15-cv-01397-BR<br><br>**PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT AND RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(Omnibus Public Lands Management Act of 2009 (the "2009 Act"), PL 111-11 – the Government Camp/Cooper Spur Land Exchange.)<br><br>**Oral Argument Requested** |

PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT AND RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503) 243-2687**
**Email: jonathanr@mcewengisvold.com**

# TABLE OF CONTENTS

Page

MOTION..................................................................................................................1

MEMORANDUM IN SUPPORT.............................................................................2

I.      INTRODUCTION .........................................................................................2

II.     FACTS AND HISTORY OF DELAY............................................................4

II.     ARGUMENT ...............................................................................................11
        A.    Standard of Review.............................................................................12
        B.    Plaintiffs have standing ......................................................................15
        C.    In Section 1206(a)(2)(A) and (a)(2)(F) of the 2009 Act, Congress Directed the Forest Service to Convey the Properties to Mt. Hood Meadows....................17
        D.    Land Trade Was First Proposed in 2004.............................................20
        E.    The Forest Service Has Missed the Statutory Deadline for Appraisal............22
        F.    Action Has Been Unreasonably Delayed ............................................22
              1.    The Rule of Reason and Congressional Timetable....................................23
              2.    Human health/economic factors and Interests prejudiced by the delay....26
              3.    Effect of expediting the action on other agency resources ......................28
              4.    Bad Faith or intentional Delay...............................................................29
        G.    The Court should compel the Forest Service to complete the necessary steps of the land exchange by April 30, 2018 ..............................................30

III.    CONCLUSION.............................................................................................32

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE i
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984) ...........24

*Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986) .......................................................13

*Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1177 n.11 (9th Cir. 2002).......13, 16, 25

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ...............................................................12

*Ctr. for Biological Diversity v. Abraham*, 218 F.Supp.2d 1143 (N.D. Cal. 2002) ..................32

*Ctr. for Biological Diversity v. Norton*, 304 F. Supp. 2d 1174, 1184 (D. Ariz. 2003) .............15

*Cutler v. Hayes*, 818 F.2d 879 (D.C. Cir. 1987) ......................................................................29

*Envtl. Def. Ctr. v. Babbitt*, 73 F.3d 867, 872 (9th Cir. 1995) ...................................................15

*Fed. Election Com. v. Rose*, 806 F.2d 1081 (D.C. Cir. 1983) ..................................................26

*Firebaugh Canal Co. v. United States*, 203 F.3d 568, 573-74 (9th Cir. 2000)........................18

*Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1998) ....................13, 15, 30, 31

*Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167, 181 (2000) .......................................16, 19

*Hells Canyon Pres. Council v. Richmond*, 841 F. Supp. 1039 (D. Or. 1993) .........................32

*Hood River Valley Residents Committee v. Bd. of Cty. Comm'rs of Hood River County*, 193 Or. App. 485 (2004)..........................................................................................................6

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977) ............................16, 17

*In re American Rivers and Idaho Rivers United*, 372 F.3d 413 (D.C. Cir. 2004) ..............24, 28

*In re Barr Labs., Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991)..........................................................29

*In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000) ............................................23

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE ii
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

*In re Core Communications, Inc.*, 531 F.3d 849 (D.C. Cir. 2008) ..........................................24

*In re Monroe Communications Corp.*, 840 F.2d 942, 946-47 (D.C. Cir. 1988),
*cert. denied*, 502 U.S. 906, 112 S. Ct. 297, 116 L. Ed. 2d 241 (1991) ....................................29

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999)..............28

*Independence Mining Co., Inc. v. Babbitt*, 105 F.3d 502 (9th Cir. 1997) .................................26

*Independence Mining Co., Inc. v. Babbitt,* 885 F. Supp. 1356 (1995),
*aff'd*, 105 F.3d 502 (9th Cir. 1997) ...........................................................................................29

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) ..........................................16, 17

*Mass. v. U.S. EPA*, 549 U.S. 497, 527–18 (2007) .............................................................16, 17

*MCI Telecomms. Corp. v. FCC*, 627 F.2d 322, 340 (D.C. Cir. 1980)..........................14, 23, 24

*Midwest Gas Utility Ass'n v. FERC*, 833 F.2d 341, 359 (D.C. Cir. 1987) ........................14, 23

*Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 30, 39 (D.D.C. 2000) ..................................26, 28

*National Resources Defense Council, Inc. v. U.S. Environmental Protection Agency*,
798 F.3d 809, 813 (9th Cir. 2015) .....................................................................................15, 23

*Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1194 (9th Cir. 2000)............13

*Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 124 S. Ct. 2373,
159 L. Ed. 2d 137 (2004) ...................................................................................................17, 22

*Nw. Ecosystem Alliance v. U.S. Fish and Wildlife Serv.*, Civil No. 02-9450KI,
2002 WL 31109573 (D. Or. Sept. 5, 2002) .............................................................................15

*Public Citizen Health Research Grp. v. Auchter*, 702 F.2d 1150, 1157–59 (D.C. Cir. 1983)..24

*Public Utility Commissioner of Oregon v. Bonneville Power Administration*,
767 F.2d 622, 626 (9th Cir. 1985) ...........................................................................................23

*Sierra Club v. Norton*, 405 U.S. 727, 739 (1972)...................................................................15

*Sierra Club v. Thomas*, 828 F.2d 783, 794–95 & nn. 77–80 (D.C. Cir. 1987).......................13

*Sugar Cane Growers Cooperative of Fla. v. Veneman*, 289 F.3d 89, 94–95 (D.C. Cir. 2002) 17

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE iii
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

*Telecommunications Research & Action Ctr. v. FAA,*
750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*") ...............................................................*passim*

*TVA v. Hill*, 437 U.S. 153, 194, 98 S. Ct. 2279, 57 L. Ed. 2d 117 (1978).............................25

*Vietnam Veterans of Am. v. CIA,* 791 F.3d 1122, 1135 (9th Cir. 2015) ...................................18

*Wang v. Chertoff*, 676 F. Supp. 2d 1086 (2009).......................................................................26

*Wilson v. Comm'r*, 705 F.3d 980, 997 (9th Cir. 2013) .............................................................13

*Xerces Society for Invertebrate Conservation v. Jewell*, No. 3:13-cv-01103-MO
(D. Or. July 31, 2014) ...............................................................................................................32

## RULES/STATUTES

16 USC §1131, National Wilderness Preservation System .......................................................29

Fed. R. Civ. P. 56(c) .................................................................................................................13

Administrative Procedure Act, 5 U.S.C. § 706(1) ...............................................................*passim*

Administrative Procedure Act, 5 U.S. C. § 555(b) .............................................................14, 16

Endangered Species Act ............................................................................................................25

Federal Land Policy Agreement Act of 1976, 43 U.S.C. § 1701 .............................................22
43 U.S.C. § 1716(d)(1)

Lewis and Clark Mount Hood Wilderness Act of 2007 .......................................................8, 25

National Environmental Policy Act...........................................................................................27

Omnibus Public Lands Management
Act of 2009 .......................................................................................................................*passim*

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE iv
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

## **MOTION**

Pursuant to Local Rule 7-1, Plaintiffs Hood River Valley Residents Committee, Mr. Mike McCarthy, Hood River County, Clackamas County and Mt. Hood Meadows ("Plaintiffs") hereby certify that the parties have made good faith efforts through both telephone conferences and written communications to resolve the dispute and have been unable to do so.

Plaintiffs hereby move for summary judgment as to relief on the claims in its Complaint. Dkt. 1.  On January 6, 2016, this Court issued an order denying the Defendants' Motion to Dismiss this case and stating that Plaintiffs could present their case that Federal Defendants had unreasonably delayed the implementation and completion of a Congressionally directed land trade.  Dkt. 21.  Therefore, the only issues to be resolved in this case  are whether the failure of Federal Defendants to complete the land trade amounts to unreasonably delay, and if so, the nature of the remedy to be issued by the Court.  *Id.*   In this regard, Plaintiffs respectfully request the following relief:

1. A declaration that the Forest Service's failure to consummate the Government Camp/Cooper Spur land exchange constitutes agency action unreasonably delayed pursuant to section 706(1) of the Administrative Procedure Act, 5 U.S.C. § 706(1);

2. An injunction compelling Federal Defendants to order the necessary appraisal, negotiate the necessary easements to completion, conduct the National Environmental Protection Act review, and complete the steps necessary to consummate the land for exchange as soon as reasonably possible, but by no means later than April 30, 2018, (Complaint ¶B); and

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 1
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

3.  That the Court retain continuing jurisdiction to enforce the terms of the injunction, including exercising the Court's contempt power in the event that the agency fails to meet required deadlines (Complaint ¶C).

Plaintiffs' cross-motion for summary judgment is supported by the following legal memorandum.[1]

## MEMORANDUM IN SUPPORT

## I.    INTRODUCTION

Plaintiffs Hood River Valley Residents Committee, Mr. Mike McCarthy, Hood River County, Clackamas County and Mt. Hood Meadows Oreg., LLC ("Plaintiffs") hereby submit this memorandum in support of their cross-motion for summary judgment and response to the motion and memorandum filed by Defendants Jim Peña et al. (the "Forest Service"). Dkt. 41.  Plaintiffs respectfully request that the Court grant their cross-motion for summary judgment and deny the Forest Service's motion for summary judgment because the Forest Service has failed to take a mandatory, discrete action required by the Omnibus Public Lands Management Act of 2009 (the "2009 Act"), PL 111-11 – the Government Camp/Cooper Spur Land Exchange. Dkt. 1, Exhibit 2 (relevant excerpts).  Plaintiffs respectfully seek declaratory relief, injunctive relief, and that the Court retains ongoing jurisdiction to enforce the terms of the injunction.

Congress directed the Forest Service to consummate the land exchange in order to implement a collaborative settlement agreement that resolves decades of contentious dispute about the future of the North Side of Mt. Hood.  In Section 1206(a)(2)(A), Congress directed that

---

[1] Plaintiffs Hood River Valley Residents Committee also intend to seek an award of its costs of litigation, including reasonable attorneys' fees (Complaint ¶ D).

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 2
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

the Forest Service "shall convey" 120 acres of developable land in Government Camp to Mt. Hood Meadows, LLC in exchange for approximately 770 acres of property on the North Side of Mt. Hood that includes a drinking watershed, forestland and prime recreational resources.  Dkt. 1, Complaint, Exhibit 2; Joint Statement of Agreed Upon Facts ("JSAF") ¶ 12, 14.

This proposed transaction arose out of a Settlement Agreement between Mt. Hood Meadows, HRVRC and Mr. McCarthy, and Hood River County.  JSAF ¶ 11-15. The Settlement Agreement and legislation were, and are, unanimously supported by Oregon's Congressional delegation, the Counties, Mt. Hood Meadows, local citizens and a broad coalition of conservation and recreational groups.  JSAF ¶ 14.  Upon the completion of the exchange, new federal Wilderness designation is triggered for public land in and around the Tilly Jane area on the North side of Mt. Hood, and new watershed protection measures are triggered for the Crystal Springs watershed. JSAF ¶ 18; Section 1205 of the 2009 Act.  Indeed, the fate of this historic Settlement Agreement hinges on the Forest Service completing its work in a timely manner.

It has now been more than seven (7) years since President Obama signed the 2009 Act, and the Forest Service still has not completed the land exchange.  In its motion for summary judgment, the Forest Service takes the position that this Court is powerless to enforce the will of Congress.  The assertion by the agency is fundamentally mistaken.  Congress commanded in Section 1206(a)(2)(A) that the Forest Service "shall convey" the Government Camp property to Mt. Hood Meadows.  The Forest Service attempts to create confusion by suggesting that a Court order granting Plaintiffs' requested remedy would somehow cause violations of Congress' will. While this Court has determined that the express 16-month deadline is not enforceable as an action unlawfully withheld, the 16-month intended timeline is certainly a strong indicator that the

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 3
CASE NO. 3:15-cv-01397-BR

McEWEN GISVOLD LLP
1100 S.W. Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone: (503) 226-7321; Facsimile: (503) 243-2687
Email: jonathanr@mcewengisvold.com

land exchange has been "unreasonably delayed," since the exchange is now more than five and

one-half years late (and counting). This Court has jurisdiction to review the agency's non-

performance of the Congressional mandate that the Forest Service "shall convey" the

Government Camp property to Mt. Hood Meadows under Section 706(1) of the APA, and to

preclude the Forest Service's continuing delay on nearly every step of the exchange.

Mt. Hood Meadows offered to convey its property to the Forest Service, as set forth in

Section 1206(a)(2)(A), on June 8, 2009. JSAF ¶ 23. On June 18, 2009, Forest Service

Supervisor Gary Larsen wrote to the Regional Forester of Region 6 and stated that Mt. Hood

Meadows "has offered to the United States all its right, title and interest in the non-Federal lands

outline in the Omnibus Public Land Management Act of 2009 * * *." JSAF ¶ 24. Forest

Supervisor Larsen further stated that this "offer of conveyance triggers a legislatively mandated

land exchange under the Act, Sec. 1206, Land Exchange, (a)(2)(A) Conveyances of Land * * *."

JSAF ¶ 24. Gary Larsen indicated that the land exchange would take between 2-3 years to

complete. AR 9670. The Forest Service's target completion date (which extended beyond

Congress' 16-month timeframe at its inception) was not met, and this pattern has been repeated

until the filing of this lawsuit. JSAF ¶ 41 (Former Supervisor Larsen targeted completion by

November 2012); JSAF ¶ 44 (Former Supervisor Chris Worth targeted completion by December

31, 2014); JSAF ¶ 46 (Supervisor Lisa Northrop targeted completion of appraisal by end of 2015,

but appraisal has still not been ordered).

## II.    FACTS AND HISTORY OF DELAY

Plaintiff Mt. Hood Meadows is a limited liability company organized under the laws of

the State of Oregon ("Mt. Hood Meadows" or "Meadows"). Mt. Hood Meadows is the recipient

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 4
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

and current owner of former County property and County funds that were traded and paid to it respectively pursuant to a land exchange completed in 2001 that was the subject of a legal action filed by Plaintiffs Hood River Valley Residents Committee.  Mt. Hood Meadows is a party to the Settlement Agreement and the exchange partner that is trading the non-federal lands to the United States Forest Service pursuant to the 2009 Act.

Plaintiff HRVRC is an Oregon non-profit corporation formed in the 1970s with the mission to protect and conserve farm and forestland for the preservation of the Hood River Valley's unique quality of rural life.  Complaint, Dkt. 1 ¶ 28.  Plaintiff Mr. McCarthy is a pear farmer who owns property in the Hood River Valley that is near the land subject to this dispute. *Id*. ¶ 29; Declaration of Mike McCarthy ("McCarthy Decl.") at ¶¶ 4-7.   HRVRC is a party to the settlement agreement. JSAF ¶ 11.  HRVRC's members and supporters live, work and play in the Hood River Valley and specifically utilized the non-federal lands that are the subject of this dispute, and which would become public again when the land trade directed by the 2009 Act is completed. McCarthy Decl. ¶¶ 14-15, 19; Declaration of Polly Wood ("Wood Decl.") ¶¶ 8-11.

Plaintiff Hood River County is a charter home rule county organized under the laws of Oregon.  The Board of County Commissioners is the "county court" that is the governing body of the County able to make decisions for it.  The County is a party to the Settlement Agreement. JSAF ¶ 11-15.  The Settlement Agreement contains obligations of the County that are contingent upon the completion of the land exchange. AR-8777-8791; AR 8826-8832.

Plaintiff Clackamas County has property within its jurisdiction that is the subject of "Settlement Agreement" and land exchange. Dkt. 11.  County regulations, including, but not limited to, Clackamas County Comprehensive Plan, Clackamas County Zoning & Development

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 5
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

Ordinance, and Clackamas County Roadway Standards, etc. are applicable to the County

property involved in the exchange, and to the Board of County Commissioners which oversees

public policy. *Id.* Clackamas County has a significant interest in preservation of sensitive lands

and habitat, business development, and recreational opportunities on both of the North side of Mt.

Hood and in Government Camp. *Id.*

In 2001, HRVRC and Mr. McCarthy challenged in state court a land trade between Hood

River County and Mt. Hood Meadows in which the County traded to the developer over 620

acres of county-owned land within the Crystal Spring Watershed. JSAF ¶ 4. Mt. Hood

Meadows intended to turn this land into a large-scale destination resort. JSAF ¶ 5. HRVRC and

Mr. McCarthy prevailed in an appeal of the circuit court's dismissal of their challenge to the

County land trade for want of jurisdiction, and the parties then entered into settlement

discussions. JSAF ¶ 8; *see also Hood River Valley Residents Committee v. Bd. of Cty. Comm'rs

of Hood River County*, 193 Or. App. 485 (2004).

On July 6, 2005, HRVRC, Mr. McCarthy, Mt. Hood Meadows and Hood River County

reached agreement on the terms of an historic settlement achieved through mediation, which put

to rest decades of dispute about the future of the North Side of Mt. Hood. JSAF ¶ 11. Dkt. 1,

Complaint, Ex. 1 Pursuant to the Settlement Agreement, Mt. Hood Meadows would trade its

holdings on the North Side of Mt. Hood to the Forest Service in exchange for approximately 120

acres of developable land in Government Camp that had already been zoned by Clackamas

County for residential development. JSAF ¶ 12-13. This 120 acres was included within the

Government Camp revitalization zone. JSAF ¶ 13. The Settlement Agreement also called for

permanent protection of the North Side of Mt. Hood as Wilderness, designation of the Crystal

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 6
CASE NO. 3:15-cv-01397-BR

McEWEN GISVOLD LLP
1100 S.W. Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone: (503) 226-7321; Facsimile: (503)
243-2687
Email: jonathanr@mcewengisvold.com

Springs watershed as a watershed protection zone, and preservation of the historic, scenic and natural landscape in this area of Mt. Hood.  JSAF ¶ 11.  Because their Settlement Agreement required federal legislation, this diverse group of stakeholders and onetime adversaries began working together to garner support from Oregon's Congressional delegation for the proposed solution.  JSAF ¶ 15-16.  This effort took many years, but with the sustained and dedicated leadership of Senator Wyden and Representative Blumenauer, Congress passed these provisions as a component of the Omnibus Public Lands Management Act of 2009, PL 111-11.  Dkt. 1, Exhibit 2 (relevant excerpts of 2009 Act).

Section 1206(a)(2)(A) of the 2009 Act states that "if Mt. Hood offers to convey to the United States all right, title, and interest of Mt. Hood Meadows in and to the non-Federal land, the Secretary shall convey to Mt. Hood Meadows all right, title, and interest of the United States in and to the Federal Laws (other than any easements reserved under subparagraph (G)), subject to valid existing rights."  Dkt. 1, Ex. 2 at 28 (emphasis added).  Furthermore, the 2009 Act states that it "is the intent of Congress that the land exchange under this subsection be completed not later than 16 months after the date of enactment of this Act."  *Id.*

The designation of Wilderness in the Cooper Spur area is governed by Section 1202(c)(2) of the 2009 Act and is contingent on the completion of the Government Camp/Cooper Spur land exchange.  Dkt. 1, Exh. 2 at 19-20.  The designation of the Crystal Spring Watershed Special Resource Management Unit ("Crystal Springs Management Unit") is governed by Section 1205 of the 2009 Act and is also contingent on the completion of the land exchange.  Dkt. 1, Exh. 2 at 24-28.

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 7
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)
243-2687**
**Email: jonathanr@mcewengisvold.com**

On March 30, 2009, President Obama signed the 2009 Act into law.  JSAF ¶ 16.  On June 8, 2009, Mt. Hood Meadows offered "to convey to the United States all its right, title and interest in the non-Federal law defined in Section 1206(a)(1)(E) of the Omnibus Public Land Management Act of 2009 . . . ."  JSAF ¶ 23.

On June 18, 2009, Forest Supervisor Gary Larsen wrote a memo to the Regional Forester of Region 6 stating the following:

> I am notifying you that Mt. Hood Meadows Oregon, LP has offered to convey to the United States all its right, title and interest in the non-Federal lands defined in the Omnibus Public Land Management Act of 2009, more popularly known as the Lewis and Clark Mount Hood Wilderness Act.  * * * Mt. Hood Meadows offer of conveyance triggers a legislatively mandated land exchange under the Act, Sec. 1206, Land Exchanges, (a)(2)(A) Conveyance of Land * * *.

JSAF ¶ 23; AR 9669-71.  Forest Supervisor Larsen stated that "the Act sets a 16 month intended deadline for completion of the land exchange under Section (F) * * *."  *Id.*  Recognizing his agency now had a Congressional mandate to proceed with the land exchange, Forest Supervisor Larsen asked for "additional funding this year sufficient to take the most important first steps this field season."  *Id.*  On July 17, 2009, Ms. Mary Wagner, Regional Forester, responded to Forest Supervisor Larsen and stated that she was redirecting "dollars to assist the Forest * * * with realty related actions (e.g., legal description reviews, value consultations, title reports, etc.) associated with the legislated land exchanged."  JSAF ¶ 27.  The Agreement to Initiate was entered into by the Forest Service and Meadows in August, 2010.  Declaration of Matthew Drake ("Drake Decl.") at ¶ 2.

Despite the initial momentum, Forest Service progress on the land exchange stalled after Mr. Larsen retired.  Drake Decl. at ¶¶ 2-3. As elaborated in detail in Mr. Drake's Declaration, the

PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT AND RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
PAGE 8
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503) 243-2687**
**Email: jonathanr@mcewengisvold.com**

delay manifested itself in the negotiations surrounding a conservation easement set forth in

Section 1206(a)(2)(G) of the 2009 Act, which were intended "to protect existing wetland * * *."

Drake Decl. ¶¶ 5-21

Despite repeated requests for drafts of the easement, the Forest Service did not timely

provide a draft of the easement identified by the 2009 Act. JSAF ¶ 44. The negotiations on the

easement stalled numerous times, as the Forest Service did not respond with any substance for

weeks and months at a time. Drake Decl. ¶¶ 6, 8, 10, 14-16. The Forest Service tried to apply the

easement to the entire property and outside the boundaries of the delineated wetland.  Drake Decl.

¶ 8.  On April 16, 2015, the Forest Service advised that the draft easement it sent was a final

draft, *i.e.* it would not change.  Drake Decl. ¶ 16.  In response to Meadows continuing to push for

reasonable changes to the draft, on June 19, 2015, the Forest Service against advised that it

would not agree to any of the changes requested by Meadows.  Drake Decl. ¶ 19.

The record shows that staff for the Oregon Congressional delegation were engaged and

informed on the level of delays and the effort to get the trade done.  On September 12, 2014,

Senator Wyden and Representative Blumenauer wrote to Forest Supervisor Lisa Northrop to

express their concern that the "exchange has dragged on far beyond the time period laid out in

the legislation" and to emphasize that the conservation and trail easements "not be drafted in a

way that creates uncertainty, additional process, or consultation that is above and beyond what is

already required by state law."  JSAF ¶ 45.  On June 30, 2015, Senators Wyden and Merkley and

Representative Blumenauer wrote to Mr. Tom Tidwell, Chief of the Forest Service to express

their serious concerns about the delay.

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 9
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

> [C]ompletion of the exchange is exceptionally behind the schedule set by the 2009 Act.  In that legislation, Congress required the Forest Service to complete the exchange within 16 months.  It has now been nearly 75 months, and the parties have yet to reach agreement over the terms of the wetland conservation easement, one of several remaining components.
>
> * * *
>
> The Mt. Hood National Forest and Mt. Hood Meadows have been working on the easement for over a year, but the Forest Service recently has indicated its willingness to negotiate no further.
> * * *
> It would be best if the Forest Service took swift action now to resolve this inefficient, long protracted process.  Failure to do so will likely elicit strong response from the public, possibly subjecting the agency to lawsuit, and will also necessitate other Congressional action.  Let's bring this nearly five year delayed land exchange to a close; any further delay is absolutely unacceptable.

JSAF ¶ 47; AR 17087-88.  The record does not show that Senators Wyden and Merkley and Representative Blumenauer ever received a written response to their letter of June 20, 2015.

Prior to initiating this legal action, on July 9, 2015, Plaintiff Hood River Valley Residents Committee contacted the Forest Service seeking further assurances about the progress the agency was making to implement the Land Exchange.  JSAF ¶ 48.  On July 27, 2015, believing that all progress had come to a halt, and having waited more than six (6) years since President Obama signed the 2009 Act into law, HRVRC and McCarthy filed this action to compel agency action.  Plaintiffs Hood River County, Clackamas County and Mt. Hood Meadows were subsequently joined as plaintiffs in the action.  Dkt. 9.

Plaintiffs present a single claim for relief to enforce the requirement in Section 1206 of the 2009 Act that the Forest Service complete the land exchange.  Dkt. 1, Complaint ¶¶ 59-63.  Plaintiffs seek declaratory relief that the Forest Service violated the 2009 Act by failing to complete the land exchange in a reasonably timeframe and an injunction compelling the Forest

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 10
CASE NO. 3:15-cv-01397-BR

Service to do so by the "earliest possible time." Dkt. 1, Complaint ¶¶ A-B. Plaintiffs also

ask that the Court retain jurisdiction to enforce the terms of the injunctive relief. Dkt. 1,

Complaint ¶ C.

## II. ARGUMENT

There is no genuine issue of material fact for trial in this case. The Forest Service does

not dispute that it has not yet completed the land exchange. This failure constitutes agency

action unreasonably delayed under Section 706(1) of the Administrative Procedure Act ("APA"),

5 U.S.C. § 706(1). This Court should reject the Forest Service's argument that the judicial

branch has no role to play in ensuring that the will of Congress as expressed in the 2009 Act is

carried out faithfully by the agency. This is so for at least three reasons.

First, the Forest Service suggests that a Court order enforcing the Congressional direction

in the 2009 Act would cause violations of the 2009 Act, but fails to provide any examples.

Second, the Forest Service plainly misses the mark by ignoring the operative language of Section

1206(a)(2)(A), which states that the Forest Service "shall convey" the Government Camp

property to Mt. Hood Meadows in exchange for the non-Federal lands. The specific actions that

the Forest Service can be ordered to take include: ordering the appraisal, completing the EIS,

preparing the necessary easements, and consummating the land exchange after the parties have

reconciled and equalized the property values. Third, the Forest Service's argument that because

the transaction is contingent on other actions the Court cannot order the Forest Service to

complete the action in a timely fashion is without any support in the law – the law does not allow

the Forest Service to unduly delay steps in the exchange that are entirely within its purview,

regardless of whether subsequent actions or decisions by the parties might derail the exchange.

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 11
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

Plaintiffs are entitled to judgment as a matter of law, and the only remaining issue for the Court to consider is the nature of the relief to be granted. In terms of remedy, Plaintiffs seek a Court-ordered deadline for completion of the land exchange because further delays threaten the very viability of completing the land exchange and ensuring that the Wilderness and watershed protection benefits that Congress intended for the North side of Mt. Hood are put in place. In the absence of this relief, Plaintiffs' long-standing interests in the conservation, management, and restoration of the North side of Mt. Hood and a fair exchange of property to achieve those objectives will be prejudiced, and the Plaintiffs will not achieve their ultimate objective of protecting the North side. This Court should grant Plaintiffs' motion, and order the Forest Service to order the appraisal and complete the steps necessary to put the trade parties in a position to equalize the values and close the deal.

A.    Standard of Review

Under Fed. R. Civ. P. 56(a), the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). From there, the burden of production shifts to the defendant to show at least one issue of material fact appropriate for trial.

When a motion is properly made and supported, the opposing party may not rely merely on allegations or denials in its own pleadings, but must support the assertion by citing to

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 12
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)
243-2687**
**Email: jonathanr@mcewengisvold.com**

materials in the record or showing that the materials cited do not establish the absence of a

genuine dispute.  Fed. R. Civ. P. 56(c).   Otherwise the court may, inter alia, consider the fact

undisputed or grant summary judgment if the motion and supporting materials show that the

movant is entitled to it.  Fed. R. Civ. P. 56(e).  When the evidence is "so one-sided that one party

must prevail as a matter of law," summary judgment is appropriate.  *Anderson v. Liberty Lobby*,

477 U.S. 242, 251–52 (1986).

      The 2009 Act does not contain its own standard of review.  Where a substantive statute

lacks its own standard of review, the Ninth Circuit imports the standard of review from §706 of

the APA.  *Wilson v. Comm'r*, 705 F.3d 980, 997 (9th Cir. 2013); *Ninilchik Traditional Council v.*

*United States*, 227 F.3d 1186, 1194 (9th Cir. 2000) ("[Section] 706 of the APA functions as a

default judicial review standard.").

      In suits alleging failure to comply with a firm deadline, the proper standard is whether

agency action was "unlawfully withheld."  5 U.S.C. § 706(1); *Biodiversity Legal Found. v.*

*Badgley*, 309 F.3d 1166, 1177 n.11 (9th Cir. 2002) (declining to apply the 'unreasonably delayed'

factors where a firm statutory deadline was imposed).  The distinction between the "unlawfully

withheld" and "unreasonably delayed" standards turns on whether Congress imposed a date

certain deadline on agency action.  *Id*.; *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th

Cir. 1998) (*citing Sierra Club v. Thomas*, 828 F.2d 783, 794–95 & nn. 77–80 (D.C. Cir. 1987)).

In the applicable legislation here, Congress stated "it is the intent of Congress that the [Land

Exchange] shall be completed not later than 16 months after" the enactment of the 2009 Act.

Sec. 1206(A)(2)(F), 123 Stat. 1019 (2009).  This Court has ruled that Federal Defendants' failure

to comply with the deadline for completing the land trade does not constitute agency action

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 13
CASE NO. 3:15-cv-01397-BR

McEWEN GISVOLD LLP
1100 S.W. Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone: (503) 226-7321; Facsimile: (503)
243-2687
Email: jonathanr@mcewengisvold.com

unlawfully withheld under § 706(1) of the APA and therefore this action is being reviewed to determine whether it has been unreasonably delayed. Dkt. 21.

In conducting that review, this Court should ensure that the agency acted within a "reasonable" time under the APA.  As the D.C. Circuit Court held in *Telecommunications Research & Action Ctr. v. FAA*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"), " section 706(1) coupled with section 555(b) does indicate the congressional view that agencies should act within reasonable time frames and that courts designated by statute to review agency actions may play an important role in compelling agency action that has been improperly withheld or unreasonably delayed. "  *Id*. at 76-77.  A short time later, the D.C. Circuit Court of Appeals stated that "generally [] a reasonable time for an agency decision could encompass 'months, occasionally a year or two, but not several years or a decade.'"  *Midwest Gas Utility Ass'n v. FERC*, 833 F.2d 341, 359 (D.C. Cir. 1987) (*quoting MCI Telecomms. Corps. v. FCC*, 627 F.2d 322, 340 (D.C. Cir. 1980)).  The Ninth Circuit has similarly adopted the *TRAC* test for determining whether an agency has "unreasonably delayed" agency action.  Those factors are:

1)    The "rule of reason;"

2)    Did Congress provide a timetable;

3)    Decisions that affect human health are more important than economic concerns;

4)    What effect would expediting the action would have on other agency concerns;

5)    The nature and extent of the interests effected by delay;

6)    The court need not find impropriety or bad faith in finding unreasonable delay.

*National Resources Defense Council, Inc. v. U.S. Environmental Protection Agency*, 798 F.3d 809, 813 (9th Cir. 2015).

PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT AND RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
PAGE 14
CASE NO. 3:15-cv-01397-BR

McEWEN GISVOLD LLP
1100 S.W. Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone: (503) 226-7321; Facsimile: (503) 243-2687
Email: jonathanr@mcewengisvold.com

In determining the appropriate timeline for agency action when a new deadline is set, the Ninth Circuit has instructed district courts to follow a standard of reasonableness. *Envtl. Def. Ctr. v. Babbitt*, 73 F.3d 867, 872 (9th Cir. 1995); *see also Ctr. for Biological Diversity v. Norton*, 304 F. Supp. 2d 1174, 1184 (D. Ariz. 2003). Consistent with Congressional intent in cases where Congress has expressed statutory deadlines, courts reviewing deadline cases in the Endangered Species Act ("ESA") context have refused to consider the agency's other priorities and have fashioned relief based on how quickly the work can be accomplished. *Forest Guardians, supra,* 174 F.3d 1178 (10th Cir. 1999); *Nw. Ecosystem Alliance v. U.S. Fish and Wildlife Serv.*, Civil No. 02-9450KI, 2002 WL 31109573 (D. Or. Sept. 5, 2002). Here Congress included a timeline for completion of the land exchange, with the result being more designated Wilderness for the Tilly Jane Roadless area and a watershed protection area on the North side of Mt. Hood. Congress intended the trade to be completed in a timely fashion. The trade has been unreasonably delayed. The purpose was to conserve and restore the North side of Mt. Hood for the benefit of present and future generations while providing Mt. Hood Meadows with equal value land in return, but the Forest Service's delay has left the parties struggling to managing properties they may not own in the future, and leaving unprotected the lands that Congress acted to protect.

### B.     Plaintiffs have standing.

Plaintiffs have alleged and established facts to show Article III standing and are properly before this Court as organizations representing aggrieved individuals. Cf. *Sierra Club v. Norton*, 405 U.S. 727, 739 (1972). Individual members have suffered an injury in fact, which is traceable

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 15
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

to the Forest Service's failure to complete the land exchange. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Mt. Hood Meadows is a party to the exchange and specifically identified in the legislation. Mt. Hood Meadows is adversely affected and aggrieved and has standing to sue. Hood River Valley Residents Committee has standing because: (1) it represent members who otherwise would have had standing to sue on their own behalf; (2) the interests at stake are germane to the organizations' purposes; and (3) neither the claims asserted nor the relief requested must require the participation of individual members in the lawsuit. *Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167, 181 (2000); *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *Biodiversity Legal Found.*, 309 F.3d at 1171. The Hood River Valley Residents Committee is a party to the settlement agreement and its members and supporters stand to benefit from the completion of the Land Exchange. Declaration of Polly Wood ("Wood Decl. ") ¶¶ 1-10.

Mike McCarthy is an individual who has standing to this action. McCarthy Decl. ¶ 12. He is a member of HRVRC and enjoys the Cooper Spur area and intends to continue do so in the future. *Id*. at ¶¶ 17-19. Mike McCarthy's future ability to gain occupational, aesthetic, scientific, moral, spiritual, and recreational values from visiting and spending time with his family at Cooper Spur will be substantially threatened and diminished without intervention from this Court. *Friends of the Earth, Inc. v. Laidlaw, supra*, 528 U.S. at 183.

Because Plaintiffs complain of a procedural failing, standing requirements as to immediacy and redressability are relaxed. *Mass. v. U.S. EPA*, 549 U.S. 497, 527–18 (2007); *Lujan, supra,* 504 U.S. at 572 n.7. A litigant who alleges a deprivation of a procedural

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 16
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

protection "never has to prove that if he had received the procedure the substantive result would have been altered.  All that is necessary is to show that the procedural step was connected to the substantive result. "  *Mass. v. U.S. EPA*, 549 U.S. at 518 (quoting *Sugar Cane Growers Cooperative of Fla. v. Veneman*, 289 F.3d 89, 94–95 (D.C. Cir. 2002)).

In this case, the viability of the land trade as a transaction that is viable for Mt. Hood Meadows to pursue is threatened by the continued delay.  If the trade is not completed, the North side will not be protected.  Neither the Wilderness protections nor the Crystal Springs watershed protections are in place, and they will not be in place unless and until the trade is completed. Hood River County will not need to proceed with its promises set forth in the Settlement Agreement.  The procedural failing is directly tied to the Plaintiffs' injury, and is redressable by this Court.

### C.     In Section 1206(a)(2)(A) and (a)(2)(F) of the 2009 Act, Congress Directed the Forest Service to Convey the Government Camp Properties to Mt. Hood Meadows.

In its motion for summary judgment, the Forest Service repeats its arguments on the previously denied motion to dismiss.  The Forest Service again asserts that Plaintiffs seek to enforce the type of discrete agency action that is not enforceable through Section 706(1) of the Administrative Procedure Act, 5 U.S.C. § 706(1).  As the Supreme Court held in *Norton v. S. Utah Wilderness Alliance,* 542 U.S. 55, 64, 124 S. Ct. 2373, 159 L. Ed. 2d 137 (2004)*,* "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take. "  The Forest Service in its motion for summary judgment contends that it cannot be ordered by  this Court to complete the trade.

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 17
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

This novel theory that contingencies somehow bar the ultimate act is without a basis in the law. Every agency action is preceded by work the agency must undertake prior to taking that action. That fact alone does not undermine the ability of the court to enforce the deadline, nor does it somehow change the nature of that final decision. The Forest Service offers no cases in support of this contingency theory, which theory would allow an agency to preclude a final decision in a land exchange by preventing the parties from ever having an opportunity to reach the decision. There is no magic to this real estate transaction. The solution is not for the court to reject the claims and to allow this transaction to languish forever, but rather to provide judicial oversight so that the agency moves through the process and undertakes these intermediate steps as envisioned by Congress.

The statutory provision at issue here plainly created a mandatory duty through its command that the Forest Service "shall convey" the identified Federal lands and that the trade "shall be completed. " Dkt. 1, Complaint, Ex. 2 at 28 (Sec. 1206, Land Exchanges, (a)(2)(A), Conveyance of Land and (a)(2)(F), Deadline). " 'The term 'shall' is usually regarded as making a provision mandatory, and the rules of statutory construction presume that the term is used in its ordinary sense unless there is clear evidence to the contrary.' " *Vietnam Veterans of Am. v. CIA,* 791 F.3d 1122, 1135 (9th Cir. 2015) (quoting *Firebaugh Canal Co. v. United States,* 203 F.3d 568, 573-74 (9th Cir. 2000)).

Congress issued mandatory direction to the Forest Service, as a land owner and land manager, to complete a discrete property transaction, and additional Wilderness and watershed designations established by Congress for other areas of public land on the North side of Mt.

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 18
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

Hood hinged on the agency doing so.  The plain language of the 2009 Act is clear that the Congress mandated that the Forest Service take a discrete act.

The Forest Service, for all practical purposes, ignores the operative language in Section 1206(a)(2)(A).  The direction that Congress intended for the land exchange "shall be completed within 16 months" is clear on it face.  Reading the language any other way would obviously undermine the intent of Congress, and render the land exchange and the subsequent Wilderness and watershed designations wholly within the discretion of the Forest Service as to whether they come to pass at all.  That is plainly not the intent of Congress.

Here, despite Congress having clearly expressed its intent that the land exchange be completed in 16 months, the Forest Service's delay has meant that this process has dragged on for more than seven (7) years and is still not complete.  Under the *TRAC* factors, Plaintiffs submit that the Forest Service's action  on the land exchange  be deemed "unreasonably delayed." Dkt. 1, Complaint ¶ 63.  The record and the testimony of the exchange partner Mt. Hood Meadows in this exchange demonstrate the excessive and unreasonable delay.  *See generally*, Drake Decl. The letters from the Oregon delegation demonstrate the unreasonable and excessive nature of the delay.  JSAF ¶¶ 45-47.  The Plaintiffs have even had to appeal to Congress to draft and pass new legislation to deal with the problems the Forest Service has caused here. Dkt. 19-3. The Mt. Hood Coopers Spur Land Exchange Clarification Act includes a number of provisions providing additional specific direction to address problems caused by the Forest Service's approach to completing this trade.  *Id.*

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 19
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

**D.     Land Trade Was First Proposed in 2004.**

In understanding the extent of the Forest Service's post-2009 delay, it is meaningful to understand that the Forest Service was well-aware that it might be ordered by Congress to engage in such an exchange.  In 2004, Dave Riley, General Manager of Mt. Hood Meadows, met with Mike Ash and other representatives of the Forest Service to discuss the proposed land trade which eventually became law.  Mike Ash wrote that the Forest Service was not interested in participating in the process. AR-008687-AR-008688.  The Forest Service has been aware of the proposed historic solution for over a decade, yet the Forest Service complains that the Congressional direction that the trade "shall be completed not later than 16 months after the date of enactment" was too ambitious.  A year and a half prior to the passage of the Act, when it was clear that Congress was committed to passing the legislation and it was only a matter of time before it would pass, the Congress told the Forest Service to start getting ready:

> Subsection (f) states that it is the intent of Congress that the exchange be completed within 16 months of the date of enactment of this Act. The Committee considered the Administration's testimony that it views this timeframe as unachievable given procedural requirements and competing priorities. The Committee, however, believes the timeframe is reasonable and achievable, and accordingly has retained the statement of congressional intent. The Committee deleted an entire section regarding concessions to facilitate and simplify the process. The Committee also understands that Mt. Hood Meadows is willing to begin the land exchange process while S. 647 is pending in Congress, and the Committee encourages the Forest Service to do so in order to facilitate the timely completion of the land exchange.

Dkt. 15-1.  The Forest Service knew many years before the passage of the Act that Congress was planning to pass a law requiring the land exchange. *Id.* The Forest Service took its concerns to Congress, but Congress rejected those arguments. *Id.*  Congress stated clearly in the legislative history that the 16-month timeline is a reasonable one and encouraged the agency to get a jump

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 20
CASE NO. 3:15-cv-01397-BR

McEWEN GISVOLD LLP
1100 S.W. Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone: (503) 226-7321; Facsimile: (503)
243-2687
Email: jonathanr@mcewengisvold.com

on the process. *Id.* For the Forest Service to reiterate to this Court matters that were raised to Congress – and rejected by Congress – flouts the importance of holding the Forest Service accountable to the directions of Congress.

As of the filing of the complaint, Mt. Hood Meadows, HRVRC and the Counties have worked with the agency for more than five (5) additional years on top of the sixteen (16) months it was given to fulfill its duty. Complaint ¶¶ 20-22, 49-51, 58. The agency has had every opportunity to comply with the will of Congress by this point in time and has failed to do so.

Plaintiffs and the Congressional delegation repeatedly gave the agency the benefit of the doubt and wrote to agency officials asking the agency to take action. Complaint ¶ 58, Ex. 3 and 4. The Forest Service failed to meet deadline after deadline. JSAF ¶ 41 (Former Supervisor Larsen targeted completion by November 2012); JSAF ¶ 44 (Former Supervisor Chris Worth targeted completion by December 31, 2014); JSAF ¶ 46 (Supervisor Lisa Northrop targeted completion of appraisal by end of 2015, but appraisal has still not been ordered). As of the filing of the Complaint, the Forest Service had not prepared a conservation easement that is consistent with the requirements of the 2009 Act. Complaint ¶ 62. This lawsuit spurred the Forest Service into action and produced an agreement on terms for the conservation easement where the Forest Service conceded all of the major contested points, even though prior to the lawsuit the Forest Service had twice indicated that it was unwilling to negotiate further about the terms of the conservation easement. Drake Decl. ¶¶ 16, 19. But even if the terms of the conservation easement are agreed upon, the end goal is still a completed land exchange; the parties can only reach the point of agreeing on that exchange if the Forest Service meets a number of deadlines for additional tasks it has yet to complete. The Forest Service is many years past the deadline,

PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT AND RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
PAGE 21
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503) 243-2687**
**Email: jonathanr@mcewengisvold.com**

and the only feasible manner for the exchange to get completed is for this Court to oversee the

Forest Service's compliance with the directions of Congress.

### E.     The Forest Service Has Missed the Statutory Deadline for Appraisal.

In this specific land exchange, Congress made it clear that it intended for the Forest

Service to complete the exchange within 16 months.  But in addition to that global timeline for

this specific exchange, Congress further imposed deadlines within the Federal Land Policy

Agreement Act of 1976, 43 U.S.C. § 1701, *et seq.*  One of those deadlines requires that the

Forest Service arrange for the appraisal of property within 90 days of the Agreement to Initiate:

> No later than ninety days after entering into an agreement to initiate an exchange
> of land or interests therein pursuant to this Act or other applicable law, the
> Secretary concerned and other party or parties involved in the exchange shall
> arrange for appraisal (to be completed within a time frame and under such terms
> as are negotiated by the parties) of the lands or interests therein involved in the
> exchange in accordance with subsection (f) of this section.

43 U.S.C. § 1716(d)(1).

With respect to the present exchange, the Agreement to Initiate was executed in August

2010, giving the Forest Service through November 2010 to arrange for an appraisal of the

properties.  More than five years later, the Forest Service has still not complied with that

Congressionally-mandated deadline.

### F.     Action Has Been Unreasonably Delayed.

If an agency action has been "unreasonably delayed" under the APA, a court has the

authority to compel such action. The Supreme Court explained in *Norton v. S. Utah Wilderness*

*Alliance, supra*, 542 U.S. at 65 that "when an agency is compelled by law to act within a certain

time period, but the manner of its action is left to the agency's discretion, a court can compel the

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 22
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

agency to act, but has no power to specify what the action must be." It is also important to note that a court, in considering whether to issue a writ, "starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act." *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000).

If an action is discretionary, then the courts apply the *TRAC* factors, to determine whether the action has been "unlawfully withheld or unreasonably delayed." The Ninth Circuit adopted the use of the *TRAC* factors in *Public Utility Commissioner of Oregon v. Bonneville Power Administration*, 767 F.2d 622, 626 (9th Cir. 1985) and recently affirmed their use in *National Resources Defense Council, Inc., supra*, 798 F.3d at 813 (Issuing a writ of mandamus to end a repeated cycle of incomplete responses, missed deadlines, and unreasonable delay).

### 1.    The Rule of Reason and Congressional Timetable

Generally courts analyze the first two *TRAC* factors simultaneously, as the timetable often informs the analysis of whether the delay was reasonable. This follows from the language of *TRAC* itself: "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason. " *TRAC* at 80.

The rule of reason may be an inarticulate standard, yet the courts have said that it is decisive. Just a few years after the *TRAC* decision, the D.C. Circuit stated that "generally [] a reasonable time for an agency decision could encompass 'months, occasionally a year or two, but not several years or a decade.'" *Midwest Gas Users Ass'n, supra,* 833 F.2d at 359 (*quoting MCI Telecomms. Corp. v. FCC*, 627 F.2d 322, 340 (D.C. Cir. 1980)). The D.C. Circuit Court

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 23
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

reiterated that standard in *In re Core Communications, Inc.*, 531 F.3d 849 (D.C. Cir. 2008). In

that case, the court determined that the FCC's failure to respond to the court's remand order for

six years was unreasonable and therefore warranted a writ of mandamus. Similarly, when FERC

delayed responding to a petition for six years in *In re American Rivers and Idaho Rivers United*,

372 F.3d 413 (2004), the court found the delay to be "nothing less than egregious." *Id.* at 419.

The court stated that although "[t]here is no per se rule as to how long is too long to wait for

agency action, [] a reasonable time for agency action is typically counted in weeks or months,

not years." *Id.* The courts have consistently found delays of several years to be unreasonable. *Air*

*Line Pilots Ass'n, Int'l v. Civil Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984) (five-year delay

unreasonable); *Public Citizen Health Research Grp. v. Auchter*, 702 F.2d 1150, 1157–59 (D.C.

Cir. 1983) (per curiam) (three-year delay unreasonable); *MCI Telecomms. Corp., supra,* 627 F.2d

at 325 (four-year delay in determining a tariff held unreasonable).

In this case, the Forest Service has failed to comply with the statutory mandate for <u>over</u>

<u>six years</u>. Even without the timetable that is reflected in Congress' expression of its intent to

have the exchange completed within 16 months, the federal case law cited plainly demonstrates

that the agency has "unreasonably delayed action" solely based on the fact that the agency was

five years past the deadline when this case was filed.

The factors weigh even more heavily in favor of an injunction when the statutory time

line is taken into account. As noted above, if Congress has provided a timetable for agency

action, then that informs the reasonableness analysis.

In this case, the Forest Service had expressed concerns about the Congressional timeline;

in response, Congress specifically stated, in Senate Report 110-172, that it had taken into

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 24
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

consideration the Forest Services' comments that it "view[ed] this timeframe as unachievable

given procedural requirements and competing priorities." Senate Report 110-172, Lewis and

Clark Mount Hood Wilderness Act of 2007, Report to accompany S. 647, at 20 (Sept. 17, 2007).[2]

Despite that comment from the Forest Service, the Committee stated that it felt the timetable was

"reasonable and achievable" and therefore "decided to "retain[] the statement of Congressional

intent." *Id.* This clear direction from Congress in the face of the Forest Service's concern, shows

that Congress intended for the land exchange to occur quickly and expeditiously. Not only does

the 16-month deadline weigh heavily in favor of a court granting an injunction in this case, the

fact that Congress expressed its intent to have the exchange completed within that timeframe in

the face of the Forest Service's objection, gives additional support to this Court rejected the same

timeframe complaints brought by the Forest Service in this proceeding.

　　　In June 2015, Congressman Blumenauer wrote to the Defendants, pointing out that "the

exchange is exceptionally behind the schedule set by the 2009 Act," and specifically called out

the Forest Service for its delay, most recently the fact that "the Forest Service recently has

indicated its willingness to negotiate no further." AR-017087.

---

[2] *See, e.g. Biodiversity Legal Found. v. Badgley*, 309 F3d 1166, 1177 (9th Cir. 2002) In *Badgley,* the Ninth Circuit addressed the problems of delay in regards to the Endangered Species Act (ESA). The Fish and Wildlife Service failed to determine whether a species warranted inclusion on the Endangered Species list, in violation of the 12-month statutory mandate included in the ESA. The court said that by imposing a 12-month deadline that "Congress intended the petitioning process to interrupt the department's priority system by requiring immediate review." *Id.* at 1177 (internal quotation marks and citations omitted). It elaborated that "when federal statutes are violated, the test for determining if equitable relief is appropriate is whether an injunction is necessary to effectuate the congressional purpose behind the statute." *Id.* (*citing TVA v. Hill*, 437 U.S. 153, 194, 98 S. Ct. 2279, 57 L. Ed. 2d 117 (1978)).

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 25
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

### 2.    Human health/economic factors and Interests prejudiced by the delay

Like the first two *TRAC* factors, the third and fifth factors also inform one another and are therefore often analyzed together. The court in *TRAC* stated that "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; [and] . . . the court should also take into account the nature and extent of the interests prejudiced by delay. . . ."' *TRAC* at 80. Thus if human health or welfare is at stake, then a court should be far more likely to issue a writ compelling the agency to act than if the aggrieved party is merely seeking economic relief.

The term "human health and welfare" plainly encompasses health, but the welfare aspect encompasses varied and more subtle concepts like jobs, *Independence Mining Co., Inc. v. Babbitt*, 105 F.3d 502 (9th Cir. 1997) (because dispute over mining patent did not result in loss of jobs, human welfare was not at stake); the electoral process, *Fed. Election Com. v. Rose*, 806 F.2d 1081 (D.C. Cir. 1983) (electoral process is sensitive and thus warrants special treatment); visa applications, *Wang v. Chertoff*, 676 F. Supp. 2d 1086 (D. Idaho 2009) (residency status important factor in human welfare); and access to services, *Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 30, 39 (D.D.C. 2000) (failure to determine legal status of tribe affected members' access to federal programs, thus affecting their welfare).

In this case, Congress has mandated the land exchange under 16 USC §1131, *et seq*, the National Wilderness Preservation System. The purpose of that legislation is:

> [T]o assure that an increasing population, accompanied by expanding settlement and growing mechanization, does not occupy and modify all areas within the United States and its possessions, leaving no lands designated for preservation and protection in their natural condition, it is hereby declared to be the policy of

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 26
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

the Congress to secure for the American people of present and future generations
the benefits of an enduring resource of Wilderness.

16 U.S.C. § 1131(a) (emphasis added).  That statement of Congressional purpose recognizes that

the protection of Wilderness has great benefits for human health and well-being.

The legislation also seeks to protect the source for the Crystal Springs Drinking

Watershed, a watershed that provides clean drinking water to over 25% of the population of

Hood River County. JSAF ¶ 3. Access to clean drinking water is at the core of what sustains the

health of a community and any threats to the drinking water – from development, fire,

contamination, etc. – and is of great public importance. *Id.*

Because Congress has explicitly stated that Wilderness is beneficial to humans, it

logically follows that less Wilderness is less beneficial, and thus human welfare is at stake.

Further, the land is not only meant for the beneficial effects of having a Wilderness, but is also

meant to protect the Crystal Springs Watershed, which provides water to nearby communities.

The result of the delay may mean that some of the privately owned lands in the Crystal Springs

Drinking Watershed, which are supposed to be protected, might be logged in the meanwhile.  In

fact the Forest Service, while not completing the necessary analysis under the National

Environmental Policy Act for the land exchange, has proposed a controversial logging project for

the very lands that are to be protected as Wilderness and a watershed protection zone, which

logging project seems to have made significantly more progress than the land exchange that is

the subject of this lawsuit.  (www.fs.usda.gov/project/?project=40687).

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 27
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

### 3.    Effect of expediting the action on other agency resources

The fourth *TRAC* factor requires the Court to consider the impact expediting delayed action will have on other agency activities of a "higher or competing priority." *TRAC* at 80. Generally, the courts look at whether expediting the delay would make it impossible for the agency to complete its other duties. As stated in *Muwekma Tribe v. Babbitt*, if "an order compelling agency action will serve only to delay other important [agency] matters, then the delay in question may be considered reasonable. *Muwekma Tribe v. Babbitt*, *supra,* 133 F. Supp. 2d at 40.  Further, despite higher or competing interests, if the delay is considered unreasonable, the court might still find that it is worth expediting the disputed agency action. Ultimately the court must assess whether the agency has "indicated that any practical impediments have prevented a response or that any 'agency activities of a higher or competing priority' have required its attention."  *In re American Rivers and Idaho Rivers United*, 372 F.3d 413 (D.C. Cir. 2004) (*citing In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. (1999)).

Although in this case the Forest Service initially stated to Congress its dissatisfaction with the 16-month timetable, the Forest Service would have a difficult time arguing that the seven years it has taken is still reasonable.  The agency did not argue in its motion for summary judgment that any other agency priorities interfered in completing this work or that the request for relief set forth in the complaint would interfere with the agency's work moving forward.  The agency repeatedly made promises of timetables far shorter than 7 years total, but did not meet them.  The agency repeatedly took many, many months to provide substantive responses. Drake Decl ¶¶ 8, 11-16.

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 28
CASE NO. 3:15-cv-01397-BR

McEWEN GISVOLD LLP
1100 S.W. Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone: (503) 226-7321; Facsimile: (503)
243-2687
Email: jonathanr@mcewengisvold.com

### 4. Bad Faith or intentional Delay

The last "factor" in the *TRAC* analysis is more of an affirmation that the delay does not need to be found to be intentional or in bad faith in order to be found unreasonable. Specifically, the Court in *TRAC* stated "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC* at 80. However, bad faith or intentional delay weighs very heavily in favor of an issuance of a writ to compel agency action. The courts have found that "[i]f the court determines that the agency [has] delay[ed] in bad faith, it should conclude that the delay is unreasonable." *Independence Mining Co., Inc. v. Babbitt*, 885 F. Supp. 1356 (1995), *aff'd*, 105 F.3d 502 (9th Cir. 1997) (*quoting Cutler v. Hayes*, 818 F.2d 879 (D.C. Cir. 1987)). The District of Columbia Circuit has also stated that "[w]here [an] agency has manifested bad faith, as by singling someone out for bad treatment or asserting utter indifference to a congressional deadline, the agency will have a hard time claiming legitimacy for its priorities." *In re Barr Labs., Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991) (*citing In re Monroe Communications Corp.*, 840 F.2d 942, 946-47 (D.C. Cir. 1988)), *cert. denied*, 502 U.S. 906, 112 S. Ct. 297, 116 L. Ed. 2d 241 (1991).

The record shows that the Forest Service failed to move forward with certain aspects of the project, while other actions are pending, and failed to make efforts to move the process along. Drake Declaration ¶¶ 4, 8, 14-15. If the Forest Service refused to act on such requests for no practical reason, it certainly was not commercially reasonable and, in many instances, the days and months of delay that passed before a substantive response was forthcoming was egregious. *Id*.

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 29
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

While the record may not reflect intentional delay by every Forest Service staff member that worked on the trade, the record does reflect an indifference to the Congressional deadline. To the extent that serious indifference weighs in favor a declaration of unreasonable delay this is certainly one of those cases.  Looking at the whole record, the Forest Service has shown its indifference to the congressional deadline as was deemed bad faith in *In re Barr Labs*. Regardless, this factor is one that either weighs very heavily in Plaintiffs' favor, or weighs more in Plaintiffs' favor than not.

**G.     The Court should compel the Forest Service to complete the necessary steps of the land exchange by April 30, 2018.**

In order to effectuate the purpose of the 2009 Act Plaintiffs respectfully asks the Court to order the Forest Service to complete the necessary steps and actions to produce an appraisal and a NEPA analysis to allow for the equalization and exchange of properties by April 30, 2018.  In this case, injunctive relief is the only remedy that is consistent with the mandate of Congress.

Upon making a declaration that the exchange has been unreasonably delayed, this Court may compel the Forest Service to act by a date certain.  *See* 5 U.S.C. § 706(1); *Forest Guardians*, 174 F.3d at 1190–91.  In setting a timetable for injunctive relief, this Court should base that decision on how quickly the agency can complete that work without regard to the agency priorities. *Forest Guardians*, 174 F.3d 1178.

Plaintiffs' request that the Court impose a 24-month timeframe is more than reasonable, considering the substantial delay to date, the Forest Service's own past projections of the needed timeframe throughout the administrative record, the substantial work already completed, and the importance of implementing the 2009 Act.

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 30
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

In 2009, the Forest Service estimated that completion of the land exchange would take a total of two-three years, from the initiation to the end.  AR-9669-71 (Larson letter from 2009); JSAF ¶¶ 24, 41.  The Forest Service has repeatedly failed to hit the targets it has set for itself. JSAF ¶¶ 35, 44, 46.  The Forest Service has consistently estimated that completion of the land exchange would take approximately 2-3 years.  *Id.*

The Forest Service seems to rely on the significant past delays experienced to date as further justification for not imposing any timeline going forward.  The record demonstrates that the Forest Service simply did not afford the exchange the level of priority that was intended by Congress.  Forest Service staff took inordinate and commercially unreasonable amounts of time to get back to the trade partner.  Drake Decl.  ¶ 6.  The exchange project was passed around from leader to leader, pushed aside either to free-up resources for other, non-mandatory agency actions or perhaps because of a specific opposition to the completing the land exchange.  Drake Decl. ¶¶ 2-3.  It was only upon the filing of this lawsuit that Forest Service made progress on the conservation easement, and became reasonable on the terms.  Drake Decl. at ¶ 21.

Based on the agency's own estimates in the record of the time needed to complete the land exchange, an "as soon as possible" deadline but no more than 2 years from now  is more than reasonable.  Plaintiffs have no interest in imposing an unreasonable deadline that could compromise the integrity of the exchange.  But here, the timeline proposed by the Plaintiffs is fully consistent with the Act.  Injunctive relief should be framed according to how quickly the work can be accomplished if given the priority and attention required by Congress.  *See Forest Guardians*, 174 F.3d 1178.  The timeframe proposed by Plaintiffs, which would result in completion of the land exchange 8-9 years after the statutory deadline, and nearly 11 years after

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 31
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

Forest Service was first instructed by Congress to get going on the land trade. This is more than reasonable and would uphold the mandate from Congress that the Forest Service complete the land exchange in a timely manner.

Plaintiffs also request that the Court retain continuing jurisdiction over this action to ensure the imposed deadline is met, as prior courts have in similar cases. *See, e.g., Hells Canyon Pres. Council v. Richmond*, 841 F. Supp. 1039 (D. Or. 1993); *Ctr. for Biological Diversity v. Abraham*, 218 F.Supp.2d 1143 (N.D. Cal. 2002); *Xerces Society for Invertebrate Conservation v. Jewell*, No. 3:13-cv-01103-MO (D. Or. July 31, 2014).

## III.    CONCLUSION

The Forest Service's failure to complete the land exchange was "unlawfully delayed" in violation of the APA § 706(1). Each of the *TRAC* factors weighs in favor of the issuance of the writ. First, delays of several years have repeatedly been found to be unreasonable. Second, the delay is far past the timetable that Congress implemented after explicit consideration of the Forest Service's claims that it would not give them enough time. Third, the delay may cost the public its benefits from the land trade. Congress has explicitly stated that Wilderness is beneficial to citizens, and therefore human welfare is at stake. This is not merely an economic concern for the concerned groups. Fourth, the Forest Service has had years to follow through with a Congressionally-mandated action which it has failed to take. There should be no more important priorities for the Forest Service than completing the deal, yet instead the agency chooses to put forward timber sales. Fifth, the Forest Service has shown indifference to the Congressional timeline.

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 32
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**

For the foregoing reasons, Plaintiffs Hood River Valley Residents Committee, Mike McCarthy, Hood River County, Clackamas County and Mt. Hood Meadows respectfully request that this Court grant Plaintiffs' Motion for Summary Judgment and deny the Forest Service's Motion for Summary Judgment.  Plaintiffs request that the Court order the Forest Service to complete each step as soon as practical and take oversight of the transaction.

Respectfully submitted April 18, 2016.

McEwen Gisvold LLP

By _s/ Jonathan M. Radmacher_
     Jonathan M. Radmacher, OSB No. 924314
  Of  Attorneys for Mt. Hood Meadows Oregon, Ltd.

Crag Law Center

_s/ Ralph O. Bloemers_
     Ralph O. Bloemers, OSB No. 984172
Attorneys for Plaintiffs Hood River Valley Residents
     Committee and Mike McCarthy

Annala, Carey, Baker, Thompson, et al.

By _s/ Wilford K. Carey_
     Wilford K. Carey, OSB No. 720477
Attorneys for Plaintiff Hood River County

Clackamas County Counsel

By _s/ Stephen Madkour_
     Wilford K. Carey, OSB No. 941091
Attorneys for Plaintiff Clackamas County

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE 33
CASE NO. 3:15-cv-01397-BR

McEWEN GISVOLD LLP
1100 S.W. Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone: (503) 226-7321; Facsimile: (503) 243-2687
Email: jonathanr@mcewengisvold.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2016, I served the foregoing **PLAINTIFFS'**

**CROSS-MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**

**AND RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION FOR**

**SUMMARY JUDGMENT** on the persons listed below by the methods indicated below.

| | |
|---|---|
| Steve Odell<br>Assistant United States Attorney<br>District of Oregon<br>1000 SW Third Avenue, Ste. 600<br>Portland, OR 97204-2902<br>Telephone: (503) 727-1000<br>Facsimile:  (503) 727-1117<br>Email: steve.odell@usdoj.gov | \_\_  U.S. Mail<br>\_\_  Facsimile<br>\_\_  Hand Delivery<br>_x_  ECF |

Dated this 18th day of April, 2016.

McEWEN GISVOLD LLP

By  _s/ Jonathan M. Radmacher_

    Jonathan M. Radmacher, OSB No. 924314

Of  Attorneys for Mt. Hood Meadows Oregon, Ltd.

PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT AND
RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
CERTIFICATE OF SERVICE
CASE NO. 3:15-cv-01397-BR

**McEWEN GISVOLD LLP**
**1100 S.W. Sixth Avenue, Suite 1600**
**Portland, Oregon 97204**
**Telephone: (503) 226-7321; Facsimile: (503)**
**243-2687**
**Email: jonathanr@mcewengisvold.com**