Jonathan M. Radmacher, OSB No. 924314
E-mail: jonathanr@mcewengisvold.com
McEwen Gisvold LLP
1100 SW Sixth Avenue, Suite 1600
Portland, OR  97204
Telephone: (503) 226-7321
Facsimile: (503) 243-2687

Of Attorneys for Mt. Hood Meadows Oreg., LLC

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **HOOD RIVER VALLEY RESIDENTS COMMITTEE,** an Oregon non-profit corporation; **MIKE MCCARTHY**, an individual; **HOOD RIVER COUNTY**, by and through the **BOARD OF COUNTY COMMISSIONERS OF HOOD RIVER COUNTY,** an Oregon municipal corporation; **CLACKAMAS COUNTY**, by and through the **BOARD OF COUNTY COMMISSIONERS OF CLACKAMAS COUNTY**, an Oregon municipal corporation; and **MT. HOOD MEADOWS OREGON, LLC,** an Oregon limited liability corporation, | Civil No. 3:15-cv-01397-BR |
| Plaintiffs, | **DECLARATION OF MATTHEW DRAKE REGARDING MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| **JIM PeÑA**, Regional Director of Region 6 of the United States Forest Service; **LISA NORTHROP,** Supervisor, Mt. Hood National Forest of the United States Forest Service; **THOMAS L. TIDWELL**, Chief of the United States Forest Service; and the **UNITED STATES FOREST SERVICE**, an Administrative Agency of the United States Department of Agriculture; | |
| Defendants. | |

I, Matthew Drake, declare personal knowledge of the following facts and if called to

testify as a witness, would state the following:

DECLARATION OF MATTHEW DRAKE REGARDING
MOTIONS FOR SUMMARY JUDGMENT
PAGE  1
CASE NO. 3:15-cv-01397-BR

McEWEN GISVOLD LLP
1100 S.W. Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone: (503) 226-7321; Facsimile: (503) 243-2687
Email: jonathanr@mcewengisvold.com

1.	I am the Chairman and Chief Executive Officer for Mt. Hood Meadows Oreg., LLC ("Meadows"), and have served as the key principal in trying to complete the Congressionally-mandated land exchange with the United States Forest Service ("Forest Service") since March 2009.

2.	After President Obama signed the land exchange legislation in March 2009, the Mt. Hood Forest Supervisor – Gary Larsen – told me that he wanted to get things moving. Accordingly, he frequently reached out to me by phone and by in-person meetings to negotiate the Agreement to Initiate ("ATI"), which was signed in August of 2010. Mr. Larsen retained a retired Forest Service lands expert (Everett White) to work on the ATI, and to set up a detailed list of activities the Forest Service would have to accomplish in order to timely complete the land exchange. But after the ATI was signed, the Forest Service stopped using Mr. White's services; Mr. Larsen explained that Mr. White had a limited scope of service, and that the Forest Service's resources were being deployed in a manner that did not allow for retaining people with specific expertise in land exchanges to assist in our exchange – budget cuts and down-sizing were having their effect on his ability to get the exchange done.

3.	Mr. Larsen announced his retirement in the Spring of 2011, and fully retired in November of 2011. Chris Worth was announced as the Forest Supervisor in Spring of 2011, and seemed to try to advance the drafting of the conservation easement and trail easement, but also expressed his frustration at the lack of resources that could be dedicated to timely completing the exchange. In particular, Mr. Worth expressed his frustration that Forest Service staff would work on aspects of the exchange, but then would leave the agency, taking their knowledge with them and leaving key tasks undone, and leaving behind incomplete or missing project files. Mr. Worth's Deputy Forest Supervisor, Lisa Northrop, was also involved in the exchange, and replaced Mr. Worth as Forest Supervisor in October 2013, under unusual circumstances that still remain unclear to me.

DECLARATION OF MATTHEW DRAKE REGARDING
MOTIONS FOR SUMMARY JUDGMENT
PAGE  2
CASE NO. 3:15-cv-01397-BR

McEWEN GISVOLD LLP
1100 S.W. Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone: (503) 226-7321; Facsimile: (503) 243-2687
Email: jonathanr@mcewengisvold.com

4.      Although I have a variety of opinions about why the Forest Service has failed to accomplish the tasks before it in any reasonable time frame – inexperience, recalcitrance, turnover, over-reaching, and/or inadequate staffing – the interactions with the Forest Service while negotiating a form of Conservation Easement most clearly demonstrate the Forest Service's unreasonable delay. At a broad level, the Forest Service's failure to complete the land exchange was caused by (1) failing to respond to negotiations in a timely fashion, and (2) demanding unreasonable terms.

5.      In part because the Forest Service did not seem to be making any progress on any form of conservation easement for the wetlands, on March 5, 2013, I sent Exhibit 1 [AR-014981 to AR-014992] to the responsible Forest Service personnel, which had a draft form of easement and referenced a number of items that we were negotiating.

6.      More than four months later, on July 15, 2013, the Forest Service finally responded to my March 5th email and draft, in Exhibit 2 [AR-015276 to AR-015279]. Unfortunately, the Forest Service did not transmit any proposed or responsive draft of the easement. In my experience in any kind of negotiation, that four month delay, combined with the absence of any proposed form of agreement, was unreasonable.

7.      I responded to the Forest Service two weeks later, in my letter of August 3, 2013, agreeing to the issues raised by the Forest Service with respect to the conservation easement. [Exhibit 3, AR-016490 to AR-016493]

8.      It took eight months for the Forest Service to internally prepare a draft conservation easement. [Exhibit 4, AR-015700 to AR-015715]   The Forest Service's internal communication [AR-015700] specifically identified several provisions that Meadows later identified as unreasonable provisions that required Meadows to indemnify the United States, and made Meadows liable for potentially contaminated water entering the wetlands from outside of Meadows' property. [AR-015700]   Another provision that seemed clearly unreasonable was that

DECLARATION OF MATTHEW DRAKE REGARDING
MOTIONS FOR SUMMARY JUDGMENT
PAGE  3
CASE NO. 3:15-cv-01397-BR

McEWEN GISVOLD LLP
1100 S.W. Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone: (503) 226-7321; Facsimile: (503) 243-2687
Email: jonathanr@mcewengisvold.com

the Forest Service's form of agreement encumbered the entire property, not just the wetlands and a buffer. [AR-015705 at "Part I"] Even though the form of easement was internally transmitted by March 20, 2014, the Forest Service did not provide any draft to Meadows until almost a month later, on April 16, 2014. [Exhibit 5] (That email and draft easement do not appear to be part of the Administrative Record or the Supplemental Administrative Record in this case; Exhibit 5 comes from my records related to the transaction.)

9. Rather than continuing to engage in fruitless back-and-forth negotiations about the form of easement provided by the Forest Service, Meadows engaged counsel to draft a form of conservation easement that was drawn from the form(s) of conservation agreement negotiated by the United States Army Corps of Engineers, which is the federal agency typically engaged in the regulation and preservation of wetlands. That draft easement was transmitted to the Forest Service on June 25, 2014 [Exhibit 6, AR-016100 to AR-016111] Of particular note, Meadows' draft distinguished between the property that was subject to the conservation easement ("Wetlands Easement Area") and the remainder of the property ("Development Property"), so that non-wetland property that was to be divided, developed and potentially sold would not be subject to the wetlands easement. [AR-016101 at ¶ B]. Meadows' draft did not include an obligation to indemnify the United States, and did not include any right by the United States to perform work in the easement area and then charge Meadows for that work, as those kinds of terms were not demanded in any form of Army Corps of Engineers easement.

10. On September 9, 2014, the Forest Service sent a revised draft to Meadows. [Exhibit 7, AR-016383 to AR-016395] Although it distinguished between the Wetlands Easement Area and the Development Property, it included significant restrictions on the Development Property. [AR-016388 to AR-016389] Or to put it another way, the Forest Service's draft not only restricted and protected the wetlands, and a buffer around the wetlands, but it also restricted the remainder of the property that Meadows would be developing, something that was unreasonable in the context of the proposed development.

DECLARATION OF MATTHEW DRAKE REGARDING
MOTIONS FOR SUMMARY JUDGMENT
PAGE  4
CASE NO. 3:15-cv-01397-BR

McEWEN GISVOLD LLP
1100 S.W. Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone: (503) 226-7321; Facsimile: (503) 243-2687
Email: jonathanr@mcewengisvold.com

11. I responded to the Forest Service's proposal eight days later, on September 17, 2014, articulating at length why I believed the Forest Service's form of conservation was unreasonable, and why I believed the Forest Service's positions were inconsistent with the fact that existing federal and state laws and agencies would protect delineated wetlands. [Exhibit 8, AR-016438 to AR-016443]

12. Three weeks later, on October 6, 2014, the Forest Service sent me a short response, not responding to the detailed points I had made in my lengthy letter of September 17, and re-stating that the Forest Service believed its last draft was appropriate. [Exhibit 9, AR-016460 to AR-016461]

13. Three days later, on October 9, 2014, I sent the Forest Service a detailed response, again pleading with the Forest Service to consult with the state and federal agencies that regularly negotiated wetlands easements and exercised jurisdiction over wetlands – the State of Oregon's Division of State Lands, and the Army Corps of Engineers. [Exhibit 10, AR-016478 to AR-016487]  To help facilitate the negotiation process, my letter included seven key deal points in a "Summary of Objections to USFS Conservation Easement Draft," which explained my belief about why the Forest Service's draft was unreasonable.

14. Two months passed, with no response or engagement on these issues from the Forest Service.  So on December 3, 2014, I wrote another letter to the Forest Service, reminding the Forest Service that it had not responded, and that another year had gone by without substantial progress on the land exchange. [Exhibit 11, AR-016524 to AR-016525]  I received no response.

15. In February and March 2015 I communicated with the Forest Service about the need to do some sustainable forest management on Meadows' property, because refraining from that activity (to avoid disrupting the exchange) led to an increased risk of fire and disease.  On April 6, 2015, I again wrote to the Forest Service inquiring about the status of the negotiation

DECLARATION OF MATTHEW DRAKE REGARDING
MOTIONS FOR SUMMARY JUDGMENT
PAGE  5
CASE NO. 3:15-cv-01397-BR

McEWEN GISVOLD LLP
1100 S.W. Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone: (503) 226-7321; Facsimile: (503) 243-2687
Email: jonathanr@mcewengisvold.com

with respect to the conservation easement. [Exhibit 12, AR-016622 to AR-016824] In that letter, I specifically (and again) highlighted that it was unreasonable for the Forest Service to demand that the conservation easement encumber both the wetlands and the development property. [AR-016823]

16. On April 16, 2015, the Forest Service responded, sending a form of conservation easement that did not address the issues I had raised. [Exhibit 13, AR-016892 to AR-016893] (The form of draft easement does not appear to be in the administrative record, but is attached hereto as part of Exhibit 12.) The Forest Service advised that the form of easement "has also been reviewed by multiple levels of the agency and represents our final draft." [AR-016892 at ¶ 3] In part prompted by the Forest Service's statements about having the land exchange documents approved by Forest Service personnel in Washington D.C., in April 2015 I spoke to Defendant Jim Pena, inquiring about whether Ms. Northrop was required to obtain approval from any other personnel in the Forest Service; he told me that other than the Secretary being the person who would physically sign the exchange deeds, Ms. Northrop otherwise had complete authority to negotiate and reach agreement on the details of the exchange, and did not have to obtain approval from anyone else in the agency for those decisions.

17. On May 8, 2015, I wrote to the Forest Service regarding it's latest draft, and expressed my disappointment that it took the Forest Service eight months to revise a draft that did not address the primary issues of concern; I also described in detail eight issues that were of particular concern with respect to the Forest Service's draft. [Exhibit 14, AR-016936 to AR-016942] Those included (again) the breadth of the easement, the obligation to indemnify the United States, the liability imposed on subsequent purchasers of the development property, and unreasonable restrictions on later conveyance of developed properties.

18. The Forest Service wrote to me on May 22, 2015, but (again) said nothing about the conservation easement. On May 29, 2015, I wrote to the Forest Service, again expressing my

DECLARATION OF MATTHEW DRAKE REGARDING MOTIONS FOR SUMMARY JUDGMENT
PAGE 6
CASE NO. 3:15-cv-01397-BR

McEWEN GISVOLD LLP
1100 S.W. Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone: (503) 226-7321; Facsimile: (503) 243-2687
Email: jonathanr@mcewengisvold.com

concerns about the Forest Service's terms, and about the fact that the Forest Service had indicated that it was unwilling to negotiate further. [Exhibit 15, AR-016962 to AR-016965]

19. Three weeks later, on June 19, 2015, the Forest Service wrote a response to me, confirming that the Forest Service would not negotiate further about the form of easement, and still did not make any effort to address the specific issues and concerns I had raised about what I deemed to be unreasonable terms in the Forest Service's form of conservation easement. [Exhibit 16, SUPP AR-1145]

20. I responded three days later, on June 22, 2015, inquiring as to whether the Forest Service would engage in further negotiation about the conservation easement. [Exhibit 17, AR-017056]

21. Seven weeks later (and two weeks after this lawsuit was filed), on August 10, 2015, the Forest Service responded with a revised draft, and expressed a willingness to negotiate further. [Exhibit 18, AR-017321 to AR-017331]  From my perspective and knowledge, this about-face by the Forest Service seemed to be prompted only by the lawsuit.

22. On September 4, 2015, the Forest Service advised that it would like to meet to discuss the conservation easement (consistent with my request from months earlier, that the Forest Service and Meadows meet to discuss the terms on which there was not agreement). [Exhibit 19, SUPP AR-1149 to 1150]

23. With the assistance of a mediator, Meadows and the Forest Service met on September 30, 2015, and resolved the outstanding issues about the terms of the conservation easement. [Exhibit 20, SUPP AR-1151] That form of conservation easement is attached as Exhibit 21.  It does not restrict the use and/or sale of the Development Property, it does not require that Meadows or its successors indemnify the United States, it does not allow the United States to perform repairs to the wetlands and charge Meadows for that work, and it does not make Meadows liable if contaminated water from third-parties' property enters the wetlands.

DECLARATION OF MATTHEW DRAKE REGARDING MOTIONS FOR SUMMARY JUDGMENT
PAGE  7
CASE NO. 3:15-cv-01397-BR

McEWEN GISVOLD LLP
1100 S.W. Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone: (503) 226-7321; Facsimile: (503) 243-2687
Email: jonathanr@mcewengisvold.com

In my view, this is an agreement that could and should have been reached in 2013 or earlier, if the Forest Service had been timely and reasonable in its negotiations.

   I HEREBY DECLARE THAT THE ABOVE STATEMENT IS TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF, AND THAT I UNDERSTAND IT IS MADE FOR THE USE AS EVIDENCE IN COURT AND IS SUBJECT TO PENALTY FOR PERJURY.

  DATED this 18th day of April, 2016.


         *s/Matthew Drake*
         Matthew Drake

DECLARATION OF MATTHEW DRAKE REGARDING
MOTIONS FOR SUMMARY JUDGMENT
PAGE 8
CASE NO. 3:15-cv-01397-BR

McEWEN GISVOLD LLP
1100 S.W. Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone: (503) 226-7321; Facsimile: (503) 243-2687
Email: jonathanr@mcewengisvold.com

CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2016, I served the foregoing DECLARATION OF MATTHEW DRAKE IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT on the persons listed below by the methods indicated below.

| | |
|---|---|
| Steve Odell<br>Assistant United States Attorney<br>District of Oregon<br>1000 SW Third Avenue, Ste. 600<br>Portland, OR 97204-2902<br>Telephone: (503) 727-1000<br>Facsimile:  (503) 727-1117<br>Email: steve.odell@usdoj.gov<br><br>    Of Attorneys for U.S. Forest Service | __ U.S. Mail<br>__ Facsimile<br>__ Hand Delivery<br>_x_ ECF |
| Christopher G. Winter<br>Ralph O. Bloemers<br>Crag Law Center<br>917 SW Oak Street, Ste. 417<br>Portland, OR 97205<br>Telephone: (503) 525-2725<br>Facsimile:  (503) 296-5454<br>Email: chris@crag.org<br>Email: ralph@crag.org<br>    Of Attorneys for Plaintiffs Hood River Valley Residents<br>      Committee and Mike McCarthy | __ U.S. Mail<br>__ Facsimile<br>__ Hand Delivery<br>_x_ ECF |
| Victor William VanKoten<br>Wilford K. Carey<br>Annala, Carey, Baker, Thompson, et al.<br>P.O. Box 325<br>Hood River, OR 97031<br>Telephone: (541) 386-1811<br>Facsimile:  (541) 386-6242<br>Email: vvankoten@gorge.net<br><br>    Of Attorneys for Plaintiff Hood River County | __ U.S. Mail<br>__ Facsimile<br>__ Hand Delivery<br>_x_ ECF |

CERTIFICATE OF SERVICE
CASE NO. 3:15-cv-01397-BR

McEWEN GISVOLD LLP
1100 S.W. Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone: (503) 226-7321; Facsimile: (503) 243-2687
Email: jonathanr@mcewengisvold.com

| | |
|---|---|
| Stephen Madkour<br>smadkour@clackamas.us (503) 655-8362<br>Clackamas County Counsel<br>2051 Kaen Road, Suite 460<br>Oregon City, Or 97045<br>Tel. (503) 655-8362<br>Fax: (503) 742-5397<br><br>    Attorney for Plaintiff Clackamas County | ___ U.S. Mail<br>___ Facsimile<br>___ Hand Delivery<br> x  ECF |

Dated this 18th day of April, 2016.

        MCEWEN GISVOLD LLP

        By  *s/ Jonathan M. Radmacher*
           Jonathan M. Radmacher, OSB No. 924314
       Of  Attorneys for Mt. Hood Meadows Oregon, Ltd.

CERTIFICATE OF SERVICE
CASE NO. 3:15-cv-01397-BR

McEWEN GISVOLD LLP
1100 S.W. Sixth Avenue, Suite 1600
Portland, Oregon 97204
Telephone: (503) 226-7321; Facsimile: (503) 243-2687
Email: jonathanr@mcewengisvold.com